# CASES

## DECIDED IN THE

# COURT OF APPEALS OF GEORGIA

### AT THE

## OCTOBER TERM, 1907.

---

### 542.  SEABOARD AIR-LINE RAILWAY *v.* SMITH.

1. Where exceptions pendente lite have been filed to interlocutory rulings, the better practice is to assign error on them in the bill of exceptions; however, this is not exclusive, for the error may be assigned in this court at any time before the argument is begun.
2. The court erred in overruling the special demurrer to one of the counts in the petition.
(*a*) A general verdict can not be sustained when there are two counts in the petition, one good and one bad, and the court has erroneously, over protest by demurrer, submitted the bad count as well as the good one to the consideration of the jury.
(*b*) An erroneous refusal to sustain a valid special demurrer vitiates the trial.
3. Where a passenger, after being put off a train at or near a station, walks down the track of the railroad three or four miles, and is there struck by another train, without fault or negligence on the part of the crew in charge of the latter train, the railway company is not responsible for the homicide, although the passenger was drunk at the time he was put off the train.  Even if the crew who put him off were in any wise negligent in so doing, such negligence can not be considered the proximate cause of the injury.

Action for damages, from city court of Reidsville—Judge Morgan.  April 8, 1907.

Argued October 23,—Decided November 14, 1907.

*Thomas Eason, J. J. Bull, Kelly & Smith,* for plaintiff in error.

*L. C. Harrell, J. K. Hines, W. T. Burkhalter,* contra.

POWELL, J.  Mary Smith sued the Seaboard Air-Line Railway for the homicide of her unmarried and childless son, Hamp Smith, who supported her.  In her original petition she alleged, that the deceased was a passenger on a train of the defendant company

1          1

from Savannah to Claxton, Georgia, that he was asleep when Claxton was reached, and was carried beyond his station; that the conductor, when he discovered his presence, aroused the deceased, carried him to the rear end of the coach, and threw him off, while the train was going rapidly, whereby the deceased came to his death.   This was alleged to have taken place between Manassas and Collins.   By a new count, filed in amendment of her petition, plaintiff alleged, that her son was a passenger on defendant's train from Savannah to Claxton; that he was drunk and asleep when he reached Claxton, and was carried to Collins; that at Collins the conductor and the porter took her son, who was so drunk that he could not take care of himself, to the rear end of the rear coach of a long excursion train, there put him off in his drunk and helpless condition at night, some distance from the station, on or near the track of the defendant, left him there without calling anybody's attention; and he wandered off down the track of the defendant and was killed by another train of the defendant. This last mentioned fact is alleged in the ninth paragraph of the amendment, in the following language: "and [he], in said drunken and helpless condition, wandered off down the track of the defendant, towards the town of Manassas, when between the 57th and 58th mile posts on said railway of defendant said Hamp Smith . . was run over and killed by another train of the defendant."   To the petition as amended the defendant demurred generally; and to the allegation just quoted, specially, because it is too vague and indefinite and not sufficient, in that the distance from the 57th and 58th mile posts, where the homicide is alleged to have occurred, to Collins does not appear; also that it does not appear how far this place was from Claxton.   To the overruling of the demurrer exceptions pendente lite were filed.   The trial resulted in a verdict for the plaintiff in the sum of $4,000. The defendant moved for a new trial, and to the overruling of this motion brings error.   While error is not assigned in the bill of exceptions upon the exceptions pendente lite, still these exceptions were specified and brought up as a part of the record, and error was assigned in the brief filed before argument was begun in this court.   Since we have concluded that the court erred in overruling the demurrer, it will not be necessary to make any report of the evidence or of the grounds of the motion for a new trial.

1.   The point is made that the rulings of the trial judge upon

the demurrer can not be considered, because, while exceptions pendente lite were filed and were transmitted with the record, no assignment of error thereon appears in the bill of exceptions. The plaintiff in error did, however, assign error thereon in his brief filed before the argument was begun in this court. While the better practice is to assign error upon the exceptions pendente lite, in the bill of exceptions, or, if this is not done, to assign it by a separate paper filed with the record prior to the call of the .case for argument, yet there is no rule forbidding that this assignment of error shall be made in the brief of counsel. This practice is not a good one, for various manifest reasons, but the precedent of the Supreme Court has been to allow it.

2. The court should have sustained the special demurrer to the ninth paragraph of the petition as amended, on the ground that the distance from the place where the deceased was put off the train to the place where he was killed is not shown. While, of course, rulings on demurrers are to be considered entirely apart from the evidence adduced upon the trial, still the fact that this special demurrer was not captious or ill-founded is made manifest by the result which was afterwards reached on the trial. If to meet this demurrer the plaintiff had amended by alleging the truth, as it finally appeared, that the distance from Collins where the deceased was put off the train to the point where he was run over by the second train and killed was between three and four miles, the second count should have been stricken on the ground that no cause of action was therein set out. We will now merely announce this general conclusion that the statement of this distance would have negatived liability on the part of the defendant, and will discuss the reasons further on in the opinion.

There was some slight evidence, perhaps enough, to prevent this court's interference with the verdict on the ground that it is contrary to the evidence, and yet hardly enough for us to believe that any intelligent jury would have found, or the honest trial judge would have approved, a verdict thereon tending to sustain the theory of the first count,—that the agents of the railway company deliberately hurled the deceased from the train as it was going at full speed, thereby causing his death. Also, there was evidence which, if the distance which the deceased walked down the track after he was put off be considered as immaterial, would have

sustained the theory of the second count, as it is alleged; and upon this count the verdict in all probability was rendered by the jury and approved by the trial judge. So that the failure of the court to sustain the special demurrer was, as it developed, peculiarly harmful to the defendant; for the verdict, being general, may be presumed in legal contemplation to be founded upon either of the counts. Substantially the same state of things arose in the case of *Sutton* v. *State,* 122 *Ga.* 158, 160, wherein the court says: "The general rule is, that where there are several counts in an indictment, a general verdict of guilty is valid if there be one good count, though the others are defective, the presumption being that the verdict was rendered on the good count, and not on the defective ones. This general rule does not apply, however, when there are two counts in an indictment, one good and the other fatally defective, and where a demurrer to the defective count has been improperly overruled. In such a case a general verdict of guilty can not be sustained, since it is impossible to know on which count it was rendered; and if rendered on both, the verdict of necessity must be illegal. 22 Enc. Pl. & Prac. 843-4; McMurthey v. State, 38 Tex. Crim. 521; Avirett v. State, 76 Md. 510; People v. Turner, 113 Cal. 278. As the accused, in the present case, was forced to trial on both counts in the indictment, on the bad as well as on the good, the trial was illegal, and it is not necessary for the court to pass on the various rulings made during the trial of which complaints were made in the motion for a new trial." For the reason given in the language just quoted, as well as for the reason that it has been the uniform ruling in our courts that the erroneous refusal to sustain a special demurrer vitiates the whole trial, it follows, that the judgment must be reversed; and that it is unnecessary and in fact unwarranted that this court should consider further assignments of error. *Cagle* v. *Shepard,* 1 *Ga. App.* 192; *Warren* v. *Powell,* 122 *Ga.* 4; *Western Union Telegraph Co.* v. *Griffith,* 111 *Ga.* 656 (3); *Mayor of Eastman* v. *Cameron,* 111 *Ga.* 113.

3. However, we deem it apposite to the ruling made that we should discuss at some further length the law on which it is based. The negligence of the defendant, according to the second count of the petition, consisted "in expelling said Hamp Smith from said train at night and in the dark, and leaving him

upon or near the track of the defendant company, in his then drunk and helpless condition; in leaving him upon or near the track of said defendant, in said drunken and helpless condition, without any one to take care of and guard him; without calling the attention of any one to him, in his said helpless and drunken condition; and thus permitting him to wander off and on its track; and not taking said Hamp Smith to its station and waiting-room at said town of Collins." There is no allegation or contention that the crew of the second train, the one that actually struck and killed him, were in any wise negligent; nor is there any allegation that the place where the deceased was put off was unsafe or dangerous, further than may be inferred from the general allegation that it was adjacent to a railway track. Now negligence, to be actionable, must be the proximate cause of the injury. This is axiomatic. If a passenger or a trespasser is put or thrown off a train in a helpless condition, whether the helplessness be the result of drunkenness, accident, or sickness, and in this helpless condition is left by the train crew in a dangerous place, and the condition of his helplessness and the nature of the danger are such that by reason of the one he will not likely avoid the other, and, as a result of thus being exposed, he, as a natural consequence, without the intervention of other conscious and efficient agencies, encounters the danger and is injured, the negligence in so leaving and exposing him is the proximate cause of the injury. *Macon, Dublin & Savannah R. Co.* v. *Moore,* 125 *Ga.* 810; *Southern Ry. Co.* v. *Webb,* 116 *Ga.* 152; *Central R. Co.* v. *Thompson,* 76 *Ga.* 770; *South Carolina R. Co.* v. *Nix,* 68 *Ga.* 573 (8). But a man, although to some extent drunk, who is able to walk for three or four miles is not helpless as against the only danger which this petition shows to have existed, that of being run over by a subsequent train that he might happen to meet after going that distance. As was said by Mr. Justice Samuel Lumpkin in the case of *Georgia Sou. & Fla. R. Co.* v. *George,* 92 *Ga.* 766: "This case is entirely unlike those where a man who is helpless from drunkenness, or other cause, is left in a situation where he is likely to be injured should he remain, or, in attemping to leave the point where he was ejected, would be subjected to danger. The homicide of the deceased did not occur at the place of ejection, or because of such ejection, but at another time and place, and

under circumstances sufficiently remote, we think, to make it impossible, with any degree of fairness, to refer his death to the first wrong inflicted upon him by the company, if, indeed, his expulsion from the train was any wrong at all." While the evidence makes this fact appear much clearer than the pleadings do, yet the second count of the petition, as it would have read had it been amended by setting out the distance between the place of expulsion and the injury, leaves no reasonable doubt that the plaintiff's son was responsible for his own death. If the deceased was not so drunk as to be helpless, as to be no longer capable of volition and of exercising the necessary motion to get off the track, he was within the purview of the rule announced in *Southwestern R. Co.* v. *Hankerson,* 61 *Ga.* 115. "If one voluntarily becomes drunk, and consequently falls down, or lies down, in a state of insensibility on a railroad track, so that he is injured by a passing train, he can not recover for injuries so received, even though there may have been contributory negligence on the part of employees of the road." See also *King* v. *Central R. Co.,* 107 *Ga.* 757; *Parish* v. *Railroad Co.,* 102 *Ga.* 290; *Berry* v. *Northeastern R. Co.,* 72 *Ga.* 139; *Southwestern R. Co.* v. *Johnson,* 60 *Ga.* 668. In the *Glass* case, 60 *Ga.* 442, a recovery was upheld where the deceased was put off a train drunk and, after he had walked a mile and a half, was struck by another train; but the court sustained the recovery expressly on account of proof that the second crew was negligent. While the petition in the case at bar, in general terms, alleges that the defendant was negligent in leaving the deceased near the track without any one to take care of him or to guard him and without calling the attention of any one to him, thereby "permitting him to wander off and onto its track," and in "not taking said Hamp Smith to its station and waiting room at said town of Collins," yet it can easily be seen that none of these things charged to be negligent were in fact a breach of duty to him. As was said by Chief Justice Jackson in the case of *Central Railroad* v. *Thompson,* 76 *Ga.* 778, "Undoubtedly it is the duty of a railroad company so to fix its station or depot that a passenger, who gets off at the depot or place to alight, may get off the car without danger; and it is also its duty to fix such a way of exit from the depot over its right-of-way that the passenger may go away from

the place he is invited to get on and off at without danger to life or limb; but it is not its duty to see him safe and secure in his exit from the track and over its right-of-way. The cars are often gone, with the officers and agents of the company aboard, before the passenger leaves the spot where he was landed at the depot, and who is to use this extraordinary diligence to see him clear over the right-of-way, safe and secure on his route home? Not the conductor, for he is gone. Not the agent at the station, for it is not in the line of his business. Must the company employ some one to accompany him, or watch him as he leaves the depot, and until he is over the right-of-way? We think not. The obligation of the company is to furnish the way—an easy and safe way out of the car by steps onto the landing at the depot, and a safe road or path thence over its track and right-of-way at the depot, and there its obligation ceases in these respects. The passenger must himself step off on the convenient arrangement for his egress out of the car and over the road prepared for that exit. It is not bound to insure him a safe exit, but to insure him only a safe way for him to use for an exit."

*Let the judgment be reversed.*