## 656. ROLLESTONE *v.* CASSIRER & COMPANY.

1. Usually, as against the proprietor of a public place of business and in favor of those who come there to trade, the law will imply an invitation from the former to the latter to enter the premises, so as to render applicable the principles of section 3824 of the Civil Code of 1895, as follows: "Where the owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries occasioned by his failure to exercise ordinary care in keeping the premises and approaches safe." However, since in this State it is criminal for a barkeeper to sell intoxicating liquor to a drunk man, the law will not, in the absence of a showing of any contrary agreement or custom, or other similar reason, presume an invitation from a barkeeper to a drunk man to enter the saloon for the purpose of buying whisky.

(*a*) A member of the general public of the class usually allowed to enter the barroom, who lawfully and peaceably goes in, although not a customer actual or anticipatory at the time, does not, unless admission has been forbidden him, thereby become a trespasser, but is a licensee.

(*b*) The allegations in this case show the deceased to have been at least a licensee in the saloon of the defendant.

2. The owner or proprietor of the premises is not free from duty to a licensee; he must keep the premises free from pitfalls, man-traps and the like.

(*a*) The exact duty owing by the proprietor to the licensee is a matter determinable only by the specific circumstances of each case.

(*b*) If the proprietor knows that a pitfall or some similar secret danger lurks in his premises, and sees a licensee about to come into contact therewith, he should give warning.

(*c*) The duty of warning against such danger becomes the more imperative when the licensee has bad eyesight, is intoxicated, or is suffering from other infirmity known to the proprietor.

(*d*) Heavy articles which are apparently in stable equilibrium or which appear to be securely fastened, but which in fact are in unstable equilibrium and not fastened, may fairly be placed in the same category with pitfalls and man-traps.

3. The juridical or proximate cause of an injury is not necessarily the sole cause. The fact that, with the negligence of the defendant, conduct of the person injured or of a third person concurred, does not necessarily render the injury a remote consequence of such negligence.

(*a*) "Although an act of the plaintiff himself, intervening between the defendant's wrong and the injuries suffered, has concurred in producing the damages for which a recovery is sought, the defendant is not thereby excused, if such intervening act was the natural result of, or was naturally and reasonably induced by the antecedent act of the defendant. And the rule is the same where, though the plaintiff's act may not in strictness have been caused or induced by the defendant's act or omission, yet the latter caused or created a negligent and dangerous condition, upon which the plaintiff's act, harmless and innocent in itself, and

11

of a nature which might have been anticipated, operated to produce the injuries received."

(*b*) If the plaintiff's contributory conduct be negligent, a recovery is defeated only when such negligence amounts to a failure to exercise ordinary care; in other cases there is to be a comparison of the negligence of the respective parties and a diminution of the recovery. Civil Code of 1895, § 3830.

4. In viewing the conduct of a drunk man for the purpose of determining his negligence or contributory negligence, the state of mind produced by intoxication will be disregarded, and he will be judged as if the conduct were committed by him while in possession of his normal mental capacity.    His physical state, though caused by drunkenness, is, however, a condition that enters in as one of the circumstances in judging the negligence of the respective parties to the transaction.    In determining the negligence of a defendant as to injuries received by a drunk man, both the mental and the physical condition of the latter, so far as it was known or reasonably ought to have been known to the former, are legitimate matters for consideration.

5. The proprietor of a barroom had therein a heavy bar-counter which was so constructed that it was top-heavy on the outer edge, and was therefore in a state of unstable equilibrium and liable to topple as a result of any slight contact, and which ordinarily was securely fastened to the floor, but which on the occasion in question was unfastened; a drunk licensee entered the saloon and, approaching the counter, stumbled, and, to catch or steady himself, took hold of and pulled against the counter, which he supposed to be fastened as usual, but which fell upon him and killed him.    *Held*, that the negligence of the defendant and the contributory negligence of the deceased were both questions for the jury, and that the court improperly sustained a general demurrer.

Action for damages, from city court of Atlanta.—Judge Reid. January 10, 1907.

Argued November 13,—Decided November 27, 1907.

For the negligent homicide of her husband, Mrs. Rollestone sued Cassirer & Company, on a petition which, omitting formal parts, is as follows: "That said Cassirer & Company were engaged, on October 25, 1906, and for several years prior thereto, in the saloon business at No. 97 Whitehall street, city of Atlanta, said county. That said place conducted by defendants was and is a public barroom openly run to furnish alcoholic drinks and other goods intoxicating contained therein to the general public. That said place was a public house and the public were invited to go and purchase the goods furnished by defendants, and that said place was run for the personal profit of and benefit to said defendants. That said place was conducted under a license granted to said defendants by the city of Atlanta, the State of Georgia, and the United States of America, to run a barroom for public

patronage at said place. That on October 25, 1906, petitioner's husband, H. A. Rollestone, went into the place of business, as aforesaid, of defendants for the purpose of buying whisky and other merchandise sold by defendants. That at said time petitioner's husband was greatly under the influence of intoxicants, and that his condition was known to defendants and their agents in charge of said business. That he was intoxicated to that extent that he was unable to take care of himself, and his reason, judgment, discretion, and ability to know danger was entirely overthrown on account of said intoxicated condition, and that defendants and their agents in charge of said business were aware of said facts, and were put on notice of his said condition. That defendants had placed in their said place of business, several weeks prior to the time aforesaid, a barroom counter so set in said place of business loosely and without being fastened to the floor or in any way to protect its falling over. That said counter was constructed of heavy wood, and was so construed that practically the entire weight of the same was on the outside of said counter, and that said counter was constructed so that the outside of it hung over from its center of gravity; the other side of said counter was hollow and had no weight of any kind to counteract, or weight against the outside and overhanging part of said counter. That said counter was constructed so that it would easily fall over. That in height it was about four feet, and its principal weight was at or about the top of said counter. That while petitioner was in said place, on the day aforesaid he was near said counter, and in moving about on the floor of defendants' place he slipped or stumbled, and seized hold of said counter to steady himself or to raise himself up, and said counter with all of its terrible crushing weight fell over upon petitioner's husband and mashed and crushed him, and broke his leg and shocked his nervous system. That on November 30, 1906, petitioner's husband died on account of the injuries received, as aforesaid, and said death was caused and produced by the injuries aforesaid, and said injuries received in defendants' place of business were the proximate cause of the death of petitioner's husband.

"That petitioner is the widow of H. A. Rollestone, who was killed as aforesaid. That her said husband was, at the time of his death, 54 years of age, and was earning $1,200.00 per year.

That he was in the employ of Keely Company at said annual salary, and had been employed at said place for many years, and was one of their most· trusted, capable, and efficient employees. That petitioner's husband had been accustomed for many years at long intervals to drink to excess. That he would drink heavily to drunkness for a short period and would then desist and resume his business duties, which he discharged without exception, and to the full satisfaction of his employers until the time of his next periodical drunkness. That this custom of petitioner's husband was well known to his employers and to the agents in charge of said place of business. That while petitioner's husband was drinking to excess, as aforesaid, he was incapable of taking care of himself in any way, and was incapable at the time of his injuries as aforesaid, and said fact was known to defendants and their agents in charge of said business. That said counter which fell upon petitioner's husband was a dangerous contrivance to be placed in said place of business. That it is the custom of the patrons of defendants, and the patrons of all similar places constructed as was their place of business, to take hold of counters and to steady themselves by said counters, and in stumbling and falling in said places of business to use said counters in assisting themselves in restoring their equilibrium, and in putting themselves steady on their feet. That there was nothing about said counter to indicate that it was not fastened in a firm, safe manner. That the counters in defendants' place of business were all fastened firmly to the floor by means of large strips of iron screwed to the floor of said place of business. That there was nothing about the appearance or position of said counter to indicate or put any one on notice that said counter was not firmly fastened so as to prevent its falling over. That it is customary in all places of business, constructed like defendants' place was, that had counters in it constructed as was this counter that fell upon petitioner's husband, to have the same firmly and securely bolted, screwed, or fastened so as to prevent its falling over. That petitioner's husband was a customer of defendants and was in their place of business as a customer, and they owed him the high and sacred duty to protect him from injury, and see that no injury came to him by reason of any acts or omissions of theirs. That it was negligence in the defendants to have said heavy, dangerous

counter in their place of business without the same being securely bolted, screwed, or fastened so as to prevent it falling over. That it was negligence in defendants not to warn petitioner's husband of the condition of said counter and the danger of going near or touching the same. That it was negligence on the part of the defendants and their agents to permit petitioner's husband to go near said counter or touch the same or to use the same in steadying himself or in pulling himself up on his feet in falling or about to fall. That said counter was a dangerous and threatening trap, and it was negligence on the part of defendants to have said trap in their place of business."

Upon a general demurrer filed by the defendant, the court rendered the following judgment, to which the plaintiff excepts, to wit: "I do not think the defendants owed the duty alleged, nor, if they did, that the wrong complained of was the proximate result of the negligence charged; and the general demurrer is therefore sustained and the case dismissed."

James L. Key, for plaintiff.

Kontz & Austin, for defendants.

POWELL, J.   1. The different aspects in which the liability of the owner or proprietor of premises for injuries received by persons present thereon might be viewed were pointed out and discussed by this court at some length in the case of Mandeville Mills v. Dale, 2 Ga. App. 609 (58 S. E. 1060). If the deceased was on the premises by invitation, express or implied, the proprietor of the saloon was under a higher duty to him than if he was there as a bare licensee. It is conceded that ordinarily the opening of a public place of business is an invitation to members of the public to come in and transact that business; that customers in a place of business where goods are sold are ordinarily not bare licensees; but it is said that in this case no such invitation is to be implied, because, under the allegations of the petition, the plaintiff was a drunk man, and by the Penal Code, §443, "Any seller of spirituous liquors who shall sell or furnish liquors or other intoxicating drinks to any person who is at the time intoxicated or drunk shall be guilty of a misdemeanor." In the absence of an allegation that the defendant had been accustomed to sell to the deceased or others when they were drunk, or any other allegation tending to show that the deceased had reasonable cause to

believe that the defendants were willing to entertain his offer to buy on the occasion under consideration, we are led to hold, in the light of the statute quoted, that no invitation to the deceased to come for the purpose for which the petition says he came can be implied against the defendant. He was on the premises as a licensee; for members of the public, of the class usually allowed to enter, will not be considered as naked trespassers, when they are, without objection, peaceably in a public business house, though having no immediate business with the proprietor.

We are not to be understood as holding that one can be regarded as an invited person in a saloon only when he is approaching the counter to buy or when he is actually drinking. On the contrary, a person who has no intention of drinking at all may stand in this relation. For instance, if the proprietor places pictures, baseball scores, free lunches, musicians, or other things in his saloon, to attract persons there, with a view of advertising his business and with the hope that some or all of them may drink at his bar, such persons as come in response to this implicit invitation are more than bare licensees. So also, those persons who, having recently been customers or presently intending to be, with the proprietor's acquiescence and in accordance with common usage, sit or stand in the saloon, are more than licensees. Under this petition, however, the attempt to raise the implication of an invitation rests solely upon the fact that deceased entered to buy liquors,—a thing he could not reasonably expect to do in his drunken condition.

2. The owner or proprietor of the premises is, however, not free from duty to a licensee. The premises must not contain pitfalls, man-traps, and things of that character. *Mandeville Mills* v. *Dale,* supra. "There is a class of decisions holding that it is actionable negligence for the owner of grounds, over which people are accustomed to pass, to expose thereon anything which is peculiarly dangerous. These decisions proceed on the ground that such conduct is a *wanton* violation of the obligations which, in a state of society, every individual holds to every other. . . This is not a negation of the doctrine that the owner of a private building being erected on a private lot owes no duty to trespassers and idlers, or persons visiting the premises merely for their individual benefit or for curiosity, other than that he shall inflict upon them

no *wilful* or *wanton* injury. . . The sound view seems to be that the owner or occupier of real property may become liable, on the footing of negligence, to persons who are injured in their persons or their property, through the needless, wanton, or grossly negligent act of exposing other dangerous things upon his premises or upon the highway adjacent thereto, *attracting children or animals or endangering the safety of the unwary."* 1 Thomp. Neg. (ed. 1901) §950. "Some courts, disregarding distinctions relating to *trespassers, intruders, bare licensees,* etc., place the doctrine on the broad and just ground that the owner or occupier of premises is bound to exercise ordinary care to the end of keeping his premises in such condition that they will not, by reason of any insecurity or insufficiency, injure any person *rightfully* in, around, or passing by them,—at the same time holding that such owner or occupier is *not an insurer* against accidents which may happen from the condition of the premises. The distinction is that the person coming upon the premises, to whom this duty of care is due, must not come as a mere trespasser or wrong-doer, but *for some purpose lawful in itself,* and such as the owner or occupier might reasonably expect to bring him there. This being the rule, if the person injured is rightfully upon the premises, it will make no difference with reference to his right of action for the injury whether he is there as a licensee or by invitation." Id. §969. We think that, while a difference exists between the elemental concepts upon which the respective liabilities arise in cases of licensees and of invited persons, also between the terms in which the respective duties are theoretically to be stated, and while in theory the degree of care required in one case may differ from that required in the other, still, frequently the actual quantum of diligence necessary to fulfil the legal duty, under the circumstances, owing to the licensee is no less than it would be if he were an invited person. Theoretically the degree of diligence owing by the proprietor of the premises, who has a pitfall thereon to a licensee is less than that due his invited guest; yet, after the presence of the licensee is known, exactly the same acts of caution may be required of the proprietor, to satisfy the legal duty, as would be necessary if the licensee were invited. Indeed, we can conceive that the owner of lands on which a dangerous thing exists may be in legal duty bound to use a greater quantum of precaution in

behalf of an infant licensee thereon than he would in behalf of an adult invited guest. The sum of the whole matter is included in the expression frequently enunciated that "duties arise out of circumstances."

In the case of Newark Electric Co. *v.* Garden, 78 Fed. 74 (23 C. C. A. 649, 37 L. R. A. 725), Judge Dallas, after referring to the general rule that as to trespassers the landowner may keep his premises in such condition as he sees fit, quotes approvingly from Hydraulic Co. *v.* Orr, 83 Pa. St. 332, as follows: "It is true that, where no duty is owed, no liability arises. . . But, as has often been said, duties arise out of circumstances. Hence, where the owner has reason to apprehend danger, owing to the peculiar situation of his property, and its openness to accident, the rule will vary;" and adds the following: "It makes no difference, where the circumstances give rise to duty, that the plaintiff was 'technically a trespasser.' Schilling *v.* Abernethy, 112 Pa. St. 437 (3 Atl. 792, 56 Am. R. 320). The true question is: Was he 'a trespasser there, in a sense that would excuse the defendant for acts of negligence, . . whether the owner or occupant of premises is liable under any circumstances, and, if so, under what circumstances, for injuries received by a person while on such premises, and by reason of their dangerous condition?' In Railway Co. *v.* McDonald, 152 U. S. 262 (14 Sup. Ct. 619, 38 L. ed. 434), the question was thus stated, and, in answering it, the Supreme Court held that, under the circumstances of that case, the person injured could not be regarded 'as a mere trespasser, for whose safety and protection, while on the premises in question, against the unseen danger referred to, the railroad company was under no duty or obligation whatever to make provision.' The fact that, in all these cases, the court gave due weight to the circumstance that, in each of them, the person injured was a child, would not justify us in restricting the application of the principle upon which they were decided to cases which present the same peculiarity. The doctrine of all of them is that a duty of care may, by reason of the circumstances, be due from the owner of property to one who is technically a trespasser upon it; and the youth of those most likely to suffer from a failure to discharge such duty is simply one of the circumstances which, when present, is to be considered with the rest. The opinion of the court in the

case last cited can not be read without perceiving that the matter was so viewed by the Supreme Court of the United States; and the Supreme Court of Pennsylvania, by which the two cases first cited were decided, has repeatedly held that a child may be such a trespasser as to be subject to the consequences of his trespass. It has never laid down one rule with respect to children and another respecting adults, but has many times said that the former, like the latter, when trespassers 'in every sense of the word,' are to be regarded as wrongdoers to whom the owner of the premises is under no obligation." In the case of Shilling v. Abernethy, 112 Pa. St. 437 (56 Am. R. 320)., cited above, involving an injury to a licensee or trespasser, the court holds: "Where one has reason to apprehend danger from the peculiar situation of his property and its openness to accident, the rule that where no duty is owed no liability arises will not prevail; but the question of liability must be submitted to the jury, to be determined upon all the facts of the case. Circumstances may beget duties which under ordinary circumstances can not be implied; and when such circumstances are shown to exist, the question arising therefrom is not for the court, but for the jury." Also in Murray v. McShane, 52 Md. 217 (36 Am. R. 367), it is held that "A person lawfully passing along a street, who stops on the door sill of a house fronting on the street, for the purpose of adjusting his shoe, and while thus occupied, his head being within the lines of the street, without any negligence on his part is injured by a brick falling on his head, in consequence of the dilapidated condition of the wall of the house, has a right of action against the owner of the house for the injury inflicted." In Kinchlow v. Midland Elevator Co., 57 Kan. 374 (46 Pac. 703), there is a holding that "Where an owner of premises has reason to apprehend danger from the peculiar situation and condition of certain of their appurtenances and their openness to accident, the question whether he has exercised due care or not, as well as that of the contributory negligence of a person injured thereon, becomes one for the jury, to be determined upon all the facts and circumstances of the case." In the case just cited a licensee stepped upon a cover apparently safe, but which, after the manner of a trap-door, precipitated him into a barrel of hot water. In Bransom v. Labrot, 81 Ky. 638 (50 Am. R. 193), the court, sustaining a recovery in favor of a licensee or

trespasser, says: "As a general rule, the owner of land may retain to himself the exclusive use and occupation of it; but as property in lands depends upon municipal law for its recognition and protection, the use and enjoyment of it are subject to conditions imposed for the welfare and rights of others." Also, to quote from the same case, "It is held that a party is guilty of negligence in leaving anything in a place, when he knows it to be extremely probable that some other person will unjustifiably set it in motion, to the injury of a third person. (1 Addison on Torts, §11.) And said a learned judge: 'It appears to us that a man who leaves in a public place, along which persons, and among them children, have to pass, a dangerous machine, which may be fatal to any one who touches it, without any precaution against mischief, is not only guilty of negligence, but of negligence of a very reprehensible character, and not the less so because the imprudent and unauthorized act of another may be necessary to realize the mischief to which the unlawful act, or negligence of the defendant, has given occasion.' (39 B. Din. 339).
. . 'It would be a barbarous rule of law. that would make an owner of land liable for setting a trap thereon, baited with stinking meat, so that his neighbor's dog, attracted by his natural instinct, might run into it and be killed, and which would exempt him from liability for the consequences of leaving exposed and unguarded on his land a dangerous machine, so that his neighbor's child attracted to it and tempted to meddle by instincts equally as strong, might thereby be killed or maimed for life. Such is. not the law.' (9 East, 277)."

In Union Pac. R. Co. *v.* McDonald, 152 U. S. 279 (14 Sup. Ct. 619, 38 L. ed. 434), a boy stepped into slack lime which was spread upon the ground, but which upon its surface gave no indication of danger. Justice Harlan, speaking for the court, says: "Applied to the case now before us, they require us to hold that the defendant was guilty of negligence in leaving unguarded the slack pile, made by it in the vicinity of its depot building. It could have forbidden all persons from coming to its coal mine for the purposes merely of curiosity and pleasure. But it did not do so. On the contrary, it permitted all, without regard to age, to visit its mine, and witness its operation. It knew that the usual approach to the mine was by a narrow path skirting its.

slack pit, close to its depot building, at which the people of the village, old and young, would often assemble. It knew that children were in the habit of frequenting that locality and playing around the shaft house in the immediate vicinity of the slack pit. The slightest regard for the safety of these children would have. suggested that they were in danger from being so near a pit, be-- neath the surface of which was concealed (except when snow, wind, or hail prevailed) a mass of burning coals into which a child might accidentally fall and be burned to death. Under all the circumstances, the railroad company ought not to. be heard to say that the plaintiff, a mere lad, moved by curiosity to see the mine, in the vicinity of the slack pit, was a trespasser, to whom it owed no duty, or for whose protection it was under no obligation to. make provision." While the plaintiff in that case was a boy of tender years, yet this fact does not (as will appear by reading the entire opinion) affect the generality of the rule, except upon the question of the plaintiff's contributory negligence. See also Penso v. McCormick, 125 Ind. 116 (25 N. E. 156, 9 L. R. A. 313, 21 Am. St. R. 211); Bennett v. R. Co., 102 U. S. 577 (26 L. ed. 235). Of the decisions of the Supreme Court of this State, we call attention to the following: *Augusta R. Co.* v. *Andrews, 89 Ga.* 653 (16 S. E. 203); s. c. 92 *Ga.* 706 (19 S. E. 713), distinguished in *Mandeville Mills* v. *Dale, 2 Ga. App.* 609 (58 S. E. 1062); *Atlanta Cotton-Seed Oil Mills* v. *Coffey, 80 Ga.* 145 (4 S. E. 759, 12 Am. St. R. 244); *Folsom* v. *Lewis, 85 Ga.* 146 (11 S. E. 606). As to the duty of warning against pitfalls in such cases, see 1 Thomp. Neg. (ed. 1901) §993. The duty of warning against such danger becomes only the more imperative when the licensee or invited person has bad eyesight, is intoxicated, or is suffering from other infirmity known to the proprietor of the premises. Brown v. Stevens, 136 Mich. 311 (99 N. W. 12); White's Supplement to Thompson on Negligence, §993.

Heavy articles which are apparently in stable equilibrium or which are usually found securely fastened, but which are in fact in unstable equilibrium and not fastened, may fairly be placed in the same category with pitfalls and man-traps. The counter in this case—to borrow an expression from the case of Newark Co. v. Garden, 78 Fed. 79 (23 C. C. A. 649, 37 L. R. A. 725), was "not a trap, for there was no intention to ensnare, but was an

unknown, an invisible peril to which he [the deceased] might un-consciously or involuntarily be drawn, and from which, by taking ordinary care, the defendant might have protected him." Compare Eton Co. v. Langston, 24 Can. S. C. 708, s. c. 21 Ont. App. R. 624, s. c. 25 Ont. R. 78, wherein the unfastened object which fell was a large mirror.

There is another general rule upon which the defendant relies with great confidence,—that the owner is not responsible for an injury occasioned by putting one of his instrumentalities to a use for which it is not intended. In this case the petition alleges that one of the uses for which this counter was intended was that identical use the deceased attempted to make of it. Besides, the general rule is not so universal of application as to exclude a finding of negligence in those cases where the owner of premises, who has a reason to apprehend the innocent presence of persons thereon, knowingly allows his property to be or to remain in such situation that a visitor, although making no use of the premises other than a reasonably prudent person under like circumstances would be expected to make, is liable to be injured by coming in contact with what appears to be in its normal condition and safe, when as a matter of fact it contains a secret and hidden danger. See *Mayor of Jackson* v. *Boone*, 93 *Ga.* 662, 665. Suppose the proprietor of this saloon had purchased a keg of nitroglycerine for the purpose of doing some blasting and had temporarily set it down in the middle of his saloon floor where a casual passer was liable to kick against it; would he, in response to a suit by one who through inadvertence had run against it and exploded it, be heard to say, as a complete defense, that the deceased put the nitroglycerine to a purpose for which it was not intended? Compare *Babcock* v. *Johnson*, 120 *Ga.* 1035 (48 S. E. 438) ; also Schofield v. Wood, 170 Mass. 415 (49 N. E. 636).

3. The trial judge, in addition to holding that the defendant owed the deceased no duty, also held that the alleged negligence was not the proximate cause of the injury. We presume that he based this upon the view that the act of the deceased in stumbling and catching hold of the counter was the proximate cause. It took the concurrence of the act of the defendant, in leaving the counter in a state of unstable equilibrium, and the act of the deceased in grasping it, to cause the harm. The counter, if the de-

ceased had not touched it, would not have hurt him. His own stumbling and catching would not have killed him, if it had not set in motion the not reasonably to be expected danger contained in the condition of the counter. Neither alone was sufficient to cause the homicide. "It is no defense in an action for an injury resulting from negligence that the negligence or wilful wrong of third persons, or an inevitable accident, or an inanimate thing, contributed to cause the injury, if the negligence of the defendant was an efficient cause without which the injury would not have occurred. A juridical cause need not be the sole cause." Jaggard on Torts, 67. "If the damage has resulted directly from concurrent wrongful acts or neglects of two persons, each of these acts may be counted on as the wrongful cause." Cooley on Torts (3d ed), 119. "Although an act of the plaintiff himself, intervening between the defendant's wrong and the injuries suffered, has concurred in producing the damages for which a recovery is sought, the defendant is not thereby excused, if such intervening act was the natural result of, or was naturally and reasonably induced by, the antecedent act of the defendant. And the rule is the same where, though the plaintiff's act may not in strictness have been caused or induced by the defendant's act or omission, yet the latter caused or created a negligent and dangerous condition, upon which the plaintiff's act, harmless and innocent in itself, and of a nature which might have been anticipated, operated to produce the injuries received." Watson, Damages for Personal Injuries, §75. In the case of Postal Tel. Cable Co. *v.* Zopfi, 73 Fed. 609 (19 C. C. A. 605), before the United States Circuit Court of Appeals for the Sixth Circuit, where it appeared that the defendant placed a pole across a platform upon which the plaintiff had to walk from her house to the street, and the plaintiff, in stepping over the pole, slipped upon the platform which was wet, the defendant contended that the slippery condition of the platform was the proximate cause; but Judge Lurton, speaking for the court, says: "Still, the fact remains that the facts and circumstances were such that either of two inferences might be made,—one that the wet platform was the sole cause of her fall; the other, that the pole proximately and efficiently contributed, in co-operation with the wet platform, to her fall. If the jury should be of opinion from all the facts that but for the pole she would probably not

have fallen, then, though the pole was not the causa causans, it would be a cause without which the fall would probably not have occurred. Upon such a finding the liability of the plaintiff in error would be clear. McDonald *v.* Railway Co., decided by this court, April 14, 1896, 74 Fed. 104 (20 C. C. A. 322)." In Barney *v.* Burstenbinder, 7 Lans. (N.Y.) 210, the negligent shipping of a case of nitroglycerine without indicating the contents of the package was held to be the proximate cause of the injury, though the explosion immediately arose by reason of the fact that the plaintiff (the carrier) was examining the package to see what it contained. In Walters *v.* Denver Consolidated Electric Co., 12 Colo. App. 145 (54 Pac. 960), where the plaintiff came into contact with an unprotected live wire, it was held that the condition of the wire, and not the acts by which the plaintiff came into contact therewith, was the proximate cause of the injury. For further illustrative cases, see Rosenbaum *v.* Shoffner, 98 Tenn. 624 (40 S. W. 1086); Porcella *v.* Mutual Reserve Ins. Co., 50 N. Y. App. Div. 158 (63 N. Y. Supp. 599); Prescott *v.* Connell, 22 Can. S. C. 147; Willis *v.* Providence Pub. Co., 20 R. I. 285 38 Atl. 947. In this State, somewhat contrary to the general rule, we have provided by statute for recoveries in cases where the injury is the result of the concurrent acts of the plaintiff and of the defendant, even though those of the plaintiff be also negligent. If by ordinary care the plaintiff could have avoided the effects of the defendant's negligence, or if the injury would not have occurred but for the plaintiff's failure to use ordinary care, the defendant will not be held liable, though also negligent; "but in other cases the defendant is not relieved, although the plaintiff may in some way have contributed to the injury sustained." Civil Code, § 3830. In cases where both parties have been negligent, and the plaintiff's negligence does not amount to a failure to use ordinary care, a comparison is made between the respective wrongs or neglects, and a corresponding diminution in the amount of the recovery results.

4. We will next take up the contention that the admitted voluntary drunkenness of the deceased precludes a recovery. That school of jurists who consider torts as akin to crimes apply to the case of a drunk man, as to his capacity both for negligence and for contributory negligence, the ancient maxim that drunkenness is no

excuse for crime. The other school, although they do not base their theories of tort on the criminal law, just as uniformly hold the drunk man responsible for his conduct under a given state of circumstances as if he were sober. Irrespective of the various reasons given, all courts now hold that the drunk man, so far as his own conduct is concerned, is to be considered, in all matters of volition, judgment, caution, and general mental state, just as if he were sober. The state of mind produced by intoxication will be disregarded in viewing his actions, and he will be judged as if he possessed his normal capacities. The physical state produced by drunkenness is, however, a condition that enters in as one of the circumstances in determining the negligence of the respective parties to the transaction. Also, in determining the negligence of the other party to the transaction, not only the impaired physical condition, but also the vitiated mental state of the drunk man, if known to the other party, and not his normal state of mind and body, are to be considered. The maxim volenti non fit injuria is as applicable to a drunk man as to a sober man. Wherever, on the transaction as it occurred, a sober man could not recover, on account of his contributory negligence in having acted imprudently or rashly or in failing to use care to avoid injury, the drunk man will likewise be precluded. As against himself, the acts of a drunk man will afford the same concurrence with the negligence of the opposite party creating the juridic cause of his injury as if he were sober; and to the same extent, his acts may so intervene as to interpose a proximate cause between the defendant's negligence and the injurious result, and this may make the defendant's wrong juridically remote. For instance, in the recent case of *Seaboard Air-Line Ry.* v. *Smith, 3 Ga. App.* 1 (59 S. E. 199), this court held that the conduct of a drunk man, in walking down the railroad track three miles to the place where he was killed by a train, interposed such a proximate cause between his death and the negligence of the company in putting him off the train drunk, as to render that wrong of the company juridically remote. These generalizations are deduced by logical necessity from such a large number of reported cases and text-books as to render a full citation tedious. Out of the large number that might be cited, see the following: *Central R. Co.* v. *Phinazee, 93 Ga.* 488 (3), (21 S. E. 66); *Parish* v. *W. & A. R. Co., 102 Ga.* 291 (29 S. E. 715, 40 L. R. A.

364) ; *Georgia Southern & Fla. Ry. Co.* v. *George, 92 Ga. 765* (19·
S. E. 813) ; *Clay* v. *Macon & Birmingham R. Co., 111 Ga.
839* (36 S. E. 233) ; *Macon D. & S. R. Co.* v. *Moore, 125 Ga. 810,*
(54 S. E. 700) ; *Forrest* v. *Georgia R. Co., 128 Ga. 77* (57 S. E.
98) ; *Berry* v. *Northeastern R. Co., 72 Ga. 137*; *Southwestern R.
Co.* v. *Hankerson, 61 Ga. 114*; *South Carolina R. Co.* v. *Nix, 68·
Ga. 584*; *Central R. Co.* v. *Glass, 60 Ga. 442*; Seymour v. Town of
Lake, 66 Wis. 651 (29 N. W. 554) ; Fitzgerald v. Weston, 52 Wis.
354 (9 N. W. 13) ; Smith v. R. Co., 114 N. C. 728 (19 S. E. 863,.
25 L. R. A. 287) ; Kean v. B. & O. R. Co., 61 Md. 154; L. C. & S.
R. Co. v. Sullivan, 81 Ky. 634 (50 Am. R. 186) ; Werner v. Citi-
zens R. Co., 81 Mo. 368; Cassidy v. Stockbridge, 21 Vt. 391; Stroud
v. Ry. Co., .67 Mich. 380 (34 N. E. 712) ; Little Rock R. Co. v.
Parkhurst, 36 Ark. 371; Bradley v. R. Co., 8 Daly (N. Y.), 289 ;
Jagg. Torts, 165, 166; Cool. Torts (3d ed.), 192; Whart. Neg..
§§37, 196, 340, 341, 494.

5. We will now apply the principles above stated more specifi-·
cally to the case at bar. If the defendants had reason to antici-
pate the presence of persons in their barroom, they were under·
the duty, toward such as were either expressly or impliedly invited
there, to use ordinary care and diligence to see that the premises
were safe, and toward licensees to use such diligence (not exceed-
ing ordinary care and diligence) as the particular circumstances
required in anticipating the likelihood of their coming, and, after·
they came and their presence was known, to use ordinary care not
to injure them by anything done upon the premises, and not to
expose them to other peril. The jury, under the facts alleged,
would be authorized to find that the defendants might reasonably
have anticipated that the deceased and other persons would come·
into the saloon and within range of the counter; and likewise that,
by ordinary foresight and prudence, they should have anticipated,.
after they actually saw the deceased in the bar, that he in his.
drunken condition might stumble against, lean upon, catch hold
of, or otherwise come into casual contact with the counter. If the
jury should find that a reasonably prudent man, under these cir-
cumstances, would have apprehended the danger in which the de-
ceased was thus placed, then the duty of using ordinary care to
thwart that danger immediately devolved upon them. If the pres-
ence of the deceased was actually known, or, if not known, should

have been anticipated under the circumstances, and the defendant did not take the care required to avert the threatened danger, negligence is established. The question as to whether the condition of the counter presented a hidden peril, so imminent as to require warning to the deceased in his condition and under the surrounding circumstances, is likewise a jury question. If negligence in the respects indicated should be found by the jury, it would likewise be for them to determine whether that negligence alone or in connection with acts of the deceased was the proximate cause of the injury. If the conduct of the deceased in stumbling against or in catching hold of the counter was not negligent, but was casual and innocent, or was an accident unmixed with negligence, the defendant's wrong would, in a juridcal view, be the sole responsible cause. If the acts of the deceased were in some wise negligent, but were not so much so as to amount to a failure to exercise ordinary care, the jury would have the right to compare the negligence of one party with the negligence of the other and to apportion the damages by diminishing the recovery. If the injury resulted solely, from the negligence of the deceased, or from negligence on his part amounting to a failure to exercise ordinary care, or if, by the exercise of ordinary care and diligence, he could have prevented injury from the defendant's negligence, or if he put the counter to a use not reasonably to be anticipated, the plaintiff can not recover. In determining the negligence of the defendant the circumstance that the deceased was drunk, and his condition, mental and physical, so far as disclosed to the defendant, or so far as under the circumstances the defendant reasonably should have known, are to be considered. As to the conduct of the deceased, his drunkenness is no excuse for any failure on his part to use all the judgment, knowledge, care, and discretion which would have been required of him if he were sober. A part of this sober man's knowledge which he was called upon to exercise was a realization of the fact that he was drunk (this is not a bull, but a legal nicety), and that, being drunk, his physical and mental powers and faculties were impaired. It was his duty to conduct himself while in the saloon just as a sober man would have done if he had been in that physical condition as a result of illness or other innocent cause. If his stumbling was caused by physical weakness, though drunken weakness, and not from drunken misjudgment or

drunken lack of care, and, having stumbled, he acted as a reasonably prudent sober man in his physical condition would have acted, the fact of his intoxication will not make him guilty of contributory negligence. We can not say, as a matter of law, that it was not natural, prudent, and reasonably to be anticipated, that one who had casually stumbled, fallen, or otherwise come into contact with a bar-counter, should lean against, catch hold of it, or pull up by it. We have heard that one reason why bar-counters are made in the style they are said to be made is that customers in places where such counters are found frequently feel a desire to lean against, catch hold of, or pull up by something, and the bar-counter is so made as to accommodate them in these particulars as well as in others. The petition was not so perfect as it might have been, but enough was alleged to pass general demurrer (which in this State is more limited in scope than in most jurisdictions), and to make a case for decision by the jury. Therefore the judgment sustaining the demurrer is.          *Reversed.*