### 27522.   STERCHI BROTHERS STORES INC. *v.* PODHOUSER, by next friend.

DECIDED DECEMBER 1, 1939.

*Hendrix & Buchanan,* for plaintiff in error.

*Louis S. Cohen, Howell & Post,* contra.

BROYLES, C. J.   David Podhouser, a minor, by and through his father and next friend, sued Sterchi Brothers Stores Inc., to recover damages for alleged personal injuries.   The court overruled the defendant's demurrer to the petition and the exception is to that judgment.

The averments of the petition material to the question at issue are substantially as follows:   The defendant is a corporation "subject to the jurisdiction of this court in this cause. . . On or about the 7th day of October, 1937, the Southeastern Fair opened

at Lakewood Park, in Atlanta, Georgia. Defendant . . was exhibiting a washing machine in a building in which similar appliances were being exhibited at said fair. Defendant . . had a booth at said fair containing appliances on exhibit for the purpose of attracting trade in defendant corporation. . . David Podhouser, in company with his father, Joseph H. Podhouser, was walking through said building, and they were invited by the attendant at said booth into said booth for the purpose of seeing a washing machine demonstrated. The attendant . . was an employee of defendant . . [and] at said time was being paid a salary by defendant [and] in all of his actions herein described was acting as the agent of defendant corporation. Defendant . . , by, its said agent, having invited petitioner and his said father into said booth, began to exhibit said washing machine and its operations to petitioner's . . father, at the same time talking to petitioner's said father and directing his attention to the said washing machine which was then in operation. The said actions of defendant . . were for the purpose of inducing petitioner's . . father to purchase a washing machine from defendant corporation. At said time and place, and in said booth, there was another washing machine and wringer maintained and operated by defendant a short distance away from the said washing machine which was thus being demonstrated to petitioner's father and which was placed in said booth by defendant . . to be operated for profit. Said other machine at said time had a wringer attached thereto with a sign thereon with the name of the machine written upon paper wrapped about the rolls of the said wringer. The said last-mentioned washing machine had the current so cut on that the wringer was operating, although the said wringer, at said time, was not being demonstrated. The said wringer consisted of two rollers, situated closely together and made of hard rubber or some other hard material, and operating at a rate of speed such as would pull the fingers, hand and arm of any person through said wringer if such person should touch the said rollers. The said rollers were attractive to children because of their revolutions; because of the fact that they were moving; and because of the letters and writing thereon which were turning; and because same was displayed without any guard or without any warning at a public place where defendant . . knew that children were invited to come. While peti-

tioner and his said father were in said booth, and while the said father's attention was directed as aforesaid, petitioner placed his hand upon the said sign which was revolving upon the said wringer, and his hand was caught therein and violently drawn through said wringer, and his arm was pulled into said wringer up to the elbow, causing him great pain, suffering and damage, as will be hereinafter alleged. The said day was children's day, and defendant corporation knew and expected and invited children to come upon the said premises for the purpose of viewing, along with their parents, the said machines. Under the circumstances herein alleged, petitioner was an invitee upon the said premises [and] . . was an invitee in his inspection of the said machine. Defendant . . , by its said agent (whose name petitioner can not for lack of sufficient information allege), failed to watch the movements of petitioner or to cut off the said machine or to otherwise guard or protect petitioner from the danger caused from the operation of said wringer. Petitioner's father did not know that said wringer was in operation until after petitioner received the injuries herein set forth, and petitioner's father had no reason to believe that any dangerous instrumentality or any instrumentality attractive to children and likely to do harm to children was in operation at said time. The said wringer should not have been in operation, and it was negligence for same to be in operation under the said circumstances. The said wringer was an attractive nuisance and a device dangerous for children, and was maintained at a height of approximately 36 inches from the floor and well within the reach of children. . . Defendant . . was negligent, which negligence was the sole, direct and proximate cause of the injuries and damages herein alleged . . , in the following specifications: (a) In maintaining the said attractive nuisance and dangerous device for children at a height within reach of the hands of children, and in a manner when the machine was dangerous and attractive to children who might come into said booth. (b) In continuing the operation of the said wringer without the attendant being in position to watch the same and without it being demonstrated and without keeping any watch or guard to prevent it from harming children. (c) In operating the said machine without any guard to prevent children from coming in contact with it. As the sole, direct and proximate result of the said negligence, petitioner re-

ceived the following injuries, to wit: [here the alleged injuries are enumerated at length]. Petitioner at said time was eight years old and did not know and did not realize that there was any danger to him in doing what he did."

The defendant demurred to the petition: (1) Because "same does not set forth a cause of action against this defendant." (2) Because the facts alleged in the petition show that "plaintiff's injuries . . were the direct [result] of the contributory negligence of . . plaintiff." (3) Because "the washing machine described in the petition was not in law such a device as would attract children to it." (4) Because "the age of the child . . would permit him to know that by doing the acts plaintiff did, as set out in the petition, would result in the injuries as alleged that . . plaintiff received." (5) Because, "if said child . . had been in the exercise of ordinary care, the said child . . would not have sustained the alleged injuries." (6) Because "the operation of . . said clothes wringer, as described, was being properly operated, and was not such an attractive device as would cause the plaintiff to be attracted to it and receive the injuries."

In *Petree* v. *Davison-Paxon-Stokes Co.,* 30 *Ga. App.* 490 (118 S. E. 697), this court reversed a judgment dismissing the case on general demurrer. The similarity of the facts of that case to those of the instant case may be best understood from the following statement in the *Petree* case: "In the petition it is alleged that the defendant maintained, for the use of the patrons of its retail department store and as a part of that establishment, a ladies' rest-room, in which was located a slot-machine, operated for profit, by which articles of a described nature, peculiar to the needs of ladies at certain periods, are supplied for a coin deposited in the machine, and obtained by the manipulation of a lever or crank; and it is for injuries to her hand by this machine that the plaintiff claims damages. Further averments are to the effect that on the day of the injury the plaintiff's mother visited the store and purchased for herself a pair of hose, and thereafter repaired to the rest-room and into the booth of a toilet, to put them on. The plaintiff had accompanied her mother into the store and into the rest-room, but not within the booth. Before the mother had entered the toilet booth she and the child had seen a lady, in the manner above described, procure from the slot-machine one of the

packages, which were tightly rolled, neatly wrapped, and labelled with bright and attractive labels. The contents of the machine were also visible through a small glass window attached thereto, and the child, thinking that the machine was a dispenser of confections, had asked her mother for a coin with which to 'get some candy.' The mother informed her only that the packages were not candy. Within a moment or so after the mother entered the booth she heard the child screaming, and, coming out, found its fingers caught in the saw-like mechanism in an opening in the bottom of the machine. The injuries were described and alleged to be permanent. It is alleged that the machine was an attractive nuisance, inherently dangerous to children, who would be attracted by and to it, and that the defendant was negligent in maintaining it in the rest-room within the reach of children of tender years; that it was negligently located, at a height of only 39 inches above the floor, when the defendant knew or in the exercise of ordinary care should have known that at such a height the machine would be a dangerous instrumentality to children who might come in the rest-room either as patrons or in company with patrons of the store, it being usual and customary to place such machines at a height of 60 inches; that the mother had a right to assume that the device would not be dangerous to children who might handle it or place their hands about its exterior, and assumed that the machine, 'in a public place in which the public and patrons of the defendant were invited to go,' was not a trap to catch the naturally curious fingers of children; that she did not have equal means with the defendant of knowing the dangerous nature of the machine, and that both she and the child were free from fault or negligence." In that case, the court said: "It is insisted by the plaintiff in error that the child was an invitee, and by the defendant in error that it was a trespasser. We think it was neither, but rather a licensee. . . In the case of a trespasser 'liability arises only where the injury has been occasioned by the wilful and wanton negligence of the proprietor or owner. No duty of anticipating his presence is imposed; and, as was pointed out by this court in *Charleston & W. C. Ry. Co.* v. *Johnson*, 1 *Ga. App.* 441 (57 S. E. 1064), the duty to use ordinary care to avoid injuring him after his presence and danger is actually known is, in point of fact, merely the duty not to injure him wantonly or wilfully.' In the

case of a licensee 'there is a slightly higher duty on the part of the owner or proprietor of the premises. He must not wantonly and wilfully injure the licensee; *and since his presence as a result of his license is at all times probable, some care must be taken to anticipate his presence, and ordinary care and diligence must be used to prevent injuring him after his presence is known or reasonably should be anticipated* [italics ours]. The fundamental concept in this class of cases, as in that of trespassers, is of a liability only for wilful or wanton injury; but it is usually wilful or wanton not to exercise ordinary care to prevent injuring a person who is actually known to be, or reasonably is expected to be, within the range of a dangerous act being done. See *Southern Ry. Co.* v. *Chatman,* 124 *Ga.* 1026 (53 S. E. 692, 6 L. R. A. (N. S.) 283, [4 Ann. Cas. 675]). To the licensee, as to the trespasser, no duty arises of keeping the usual condition of the premises up to any given standard of safety, except that they must not contain pitfalls, man-traps, and things of that character.' Both of the above quotations are from *Mandeville Mills* v. *Dale,* 2 *Ga. App.* 607, 609 (58 S. E. 1060). 'After the presence of the licensee is known, exactly the same acts of caution may be required of the proprietor to satisfy the legal duty as would be necessary if the licensee were invited. Indeed, we can conceive that the owner of lands on which a dangerous thing exists may be in legal duty bound to use a greater quantum of precaution in behalf of an infant licensee thereon than he would in behalf of an adult invited guest. The sum of the whole matter is included in the expression frequently enunciated that "duties arise out of circumstances."' *Rollestone* v. *Cassirer,* supra [3 *Ga. App.* 161 (59 S. E. 442)]. A careful reading of this case will demonstrate that if we are correct in saying that the plaintiff was a licensee, the petition was good against demurrer. It is alleged that the device was as to a child of tender years attractive and at the same time inherently dangerous, with a basis of fact set forth, and that it was negligently placed where a child could reach it, although it is customary to place such a machine at a height of 60 inches. The child was not a trespasser; and it is a question for the jury to determine whether, under the circumstances, the defendant exercised the proper care in anticipating the presence of the plaintiff, and whether, if not, the machine was of such a character that the defendant in the exercise of ordinary diligence should not have main-

tained it at the place and in the manner alleged in the petition. . . Our ruling is not an extension or even an application of the doctrine of the turn-table cases." See also *Clary Maytag Co.* v. *Rhyne,* 41 *Ga. App.* 72 (151 S. E. 686).

In our opinion, the instant petition sets out a stronger case for the plaintiff than did the petition in the *Petree* case. In that case, this court, on page 492, said: "There is no allegation that the child was invited to the store, and no facts are set forth from which an invitation to a child of its age could be implied. The visit of the mother was for the purpose of making a purchase for herself and not for the child. Its presence was merely the choice of the mother, for the pleasure or convenience of herself or the child." In this case the petition alleges that the defendant, through its authorized agent, and for the purpose of trying to sell the plaintiff's father one of its machines, *expressly and orally* invited the plaintiff and his father into its place of business, where the alleged attractive and dangerous machine was being operated, and it was a question for a jury to determine whether, under the circumstances set forth in the petition, the machine was of such a character that the defendant, in the exercise of ordinary diligence, should not have maintained it at the place and in the manner alleged. In the *Petree* case, on page 497, the court said: "The cases of Miller *v.* Peck Dry Goods Co., 104 Mo. App. 609 (78 S. W. 682), and Hillerbrand *v.* May Mercantile Co., 141 Mo. App. 122 (121 S. W. 326), cited by the plaintiff in error to sustain her contention that she was an invitee, are not applicable, for the reason that in each [case] the relation [of invitee] was distinctly alleged." In the instant case that relation was distinctly alleged, and the allegation was supported by the facts set out in the petition. The fact that the express invitation was given the plaintiff and his father by the defendant to *further its own business,* by inducing, or trying to induce, the father to buy, then and there, one of its washing machines, differentiates the case from those which hold that even where one visits the premises of another on an express invitation by the owner thereof, but where the purpose of the visit is *wholly disconnected* with the business of the owner, such an invitee occupies the status of a mere licensee. The demurrers, general and special, to the petition were properly overruled.

*Judgment affirmed. MacIntyre and Guerry, JJ., concur.*