THE KANSAS CENTRAL RAILWAY COMPANY V. JERRY FITZSIMMONS.

1. PERSONAL INJURIES, *Action for; Negligence; Questions of Fact.* In an action against a railroad company for injuries received by the plaintiff (a boy twelve years old), on a turn-table, negligently left in a public place, unlocked, unguarded, etc., the questions whether the defendant had anything to do with the turn-table, whether the defendant was negligent or not, and whether the plaintiff was guilty of contributory negligence or not, are questions of fact, to be determined by the jury upon the evidence.

2. FINDING OF JURY, *When Not Disturbed.* Where fifty-six miles of railway, including a turn-table, are constructed and completed, and then the further construction of the railway is suspended for several years, and from and after the said completion of said fifty-six miles of railway, the railway is operated and managed for general business and transportation, by the consent of all parties, in the name of the railroad company for which it was constructed, and the construction company is not known to the public or to persons doing business with the railway, but only the railway company, and the railway has not been leased to the construction company, *held,* that a finding of the jury, approved by the trial court, that the railway company was responsible for the condition of said turn-table, at a period of time about ten months after the completion of said fifty-six miles of railway, will not be disturbed by the supreme court, whatever the other evidence may show were the private wishes or understanding of the said railway company and said construction company.

3. VERDICT, *When Conclusive.* Where a turn-table is situated near a populous city, in an open prairie, where the cattle of citizens roam and graze, where persons frequently pass and repass, and where boys often play, and yet is left without locks or fastenings, and without being watched or guarded, or even fenced in, and a boy, hunting his father's cow, goes to the turn-table with other boys, and rides and plays upon it, and is injured by means thereof, and the jury find that the railway company leaving

the turn-table in that condition is guilty of negligence, and is liable for the injuries to said boy, *held,* That the verdict of the jury is conclusive. And where the jury also find in such a case that said boy is not guilty of contributory negligence, which finding is approved by the trial court, *held,* That under the circumstances of this case, (which are stated more fully in the opinion,) said verdict cannot be disturbed by the supreme court.

*Error from Leavenworth District Court.*

ACTION by *Fitzsimmons,* by his father as his next friend, to recover damages for personal injuries sustained. Trial at the March Term, 1878, of the district court, and verdict and findings for the plaintiff for $500 and costs. New trial denied, and the defendant brings the case here for review. The facts are stated in the opinion.

*E. Stillings,* for plaintiff in error.

*Lucien Baker,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This is the second time that this case has been to this court. (18 Kas. 34.) The first judgment rendered in the case (which judgment was in favor of Fitzsimmons, and against the railway company for $3,000 and costs), was reversed by this court, and the cause remanded to the district court for further proceedings. On its return to the district court it was again tried; and this time it was tried in accordance with the expressed views of the supreme court stated in its opinion. This second trial resulted in a judgment in favor of Fitzsimmons, and against the railway company for $500 and costs; and, considering that the plaintiff, Fitzsimmons, lost a leg and about four months' time in being cured, and suffered much, and paid $100 doctor's bill, the amount of the judgment seems not to be excessive, provided, of course, that the railway company is liable for the plaintiff's injuries. But the railway company claims that it is not liable for such injuries; and it again brings the case to this court, and now asks that this second judgment shall

also be reversed. The plaintiff's injuries were caused by the revolving of a turn-table, belonging to the defendant railway company; but the defendant claims that it is not liable for such injuries — (1) because it had nothing to do with the said turn-table, or with the operation of the railway to which the turn-table belonged; (2) because even if it had anything to do with said turn-table, still it was not guilty of any negligence in connection therewith; and (3) because the plaintiff was himself guilty of contributory negligence. The questions, however, whether the defendant had anything to do with said turn-table, whether the defendant was guilty of negligence, and whether the plaintiff was guilty of contributory negligence, were, upon the evidence introduced in this case, all questions of fact, which were properly submitted to the jury, and upon which the jury found against the defendant, and the verdict of the jury was sustained by the court below. There was evidence introduced tending to prove each side of these questions. This would seem to be an end of the controversy, as this court cannot ordinarily review the findings of the court below, or the verdict of the jury upon mere questions of fact. But we shall briefly review the facts, as the plaintiff in error (defendant below) seems to think that there is a question of law somewhere lurking in the case, which may possibly be reviewed by this court. The facts of the case are pretty fully stated in 18 Kas., pp. 35, 36, but we shall have occasion to restate some of them, and to state others, in our discussion of the case.

I. Had the defendant (the Kansas Central railway company) anything to do with said turn-table? or rather had the defendant enough to do with the turn-table to make it responsible for its condition? This turn-table belonged to and was a part of the Kansas Central railway, which was completed in October, 1872, from Leavenworth City to Holton, a distance of about 56 miles. It is claimed to have been constructed and afterward operated by a supposed corporation called "The Washington Improvement Company." This supposed corporation existed, if it existed at all, under a

special act of the legislature of Pennsylvania. Its capital stock was nominally $100,000, divided into 2,000 shares of $50 each, only 500 shares of which, however, belonged to individuals, and only five per cent. of even these shares was ever paid into the corporation. The capital stock of the corporation was therefore in fact only $25,000, and the capital actually paid in was only $1,250. There were only three stockholders of this supposed corporation: Wm. A. Martin, of Kansas, and Mr. Blakesley and Mr. Green, of Philadelphia, Pa. This railway was not extended any further than from Leavenworth to Holton for several years after its said completion, and not for some years after the plaintiff received the injuries for which this suit was brought. And during all that time the railway was operated and managed in the name of the Kansas Central railway company. All persons did business with the railway in that name, and all the engines, cars and other property of the railway, which had any name upon them, were marked with that name. The Washington Improvement Company was not known to the public, or to parties doing business with the railway. Then, was not the jury justified in finding and believing that the railway was in fact operated and managed by the Kansas Central railway company, and not by the Washington Improvement Company, whatever the other evidence may have shown to have been the private wishes or desires, or understanding of the two companies? The jury may have thought that the claim, that the railway was operated and managed by the Washington Improvement Company, and not by the Kansas Central railway company, was a mere sham and a fraud; and if they did so think, we cannot say that they were wrong. Even the existence of the Washington Improvement Company seems to be mythical. The question, however, as to whether the railway was operated by the railway company or by the improvement company was one of fact, and it was fairly submitted to the jury, and they found against the defendant. It must be remembered that the plaintiff was injured on August 17, 1873, and that the railway had been completed and operated from Leavenworth to Holton in the

44 — 22 KAS.

name of the Kansas Central railway company for about ten months before this injury occurred. And it was operated not merely for construction purposes, but it was operated for general business and transportation; and there is nothing in the evidence tending to show that the railway had ever been leased to the Washington Improvement Company. But for the purposes of this case, suppose that the Washington Improvement Company did operate the railway at the time when the accident occurred (and there was some evidence tending to show that it did), still the jury were justified in finding, if they did so find, that it operated the same, not for itself alone, but for the railway company, and as its agent and servant, and therefore that the railway company, the master, operated the road through its servant, the improvement company. The finding of the jury was general, and in favor of the plaintiff, and hence we cannot tell just what the jury did find; but we must presume that they found everything in favor of the plaintiff and against the defendant.

II. Was the railway company negligent? This question was also fairly submitted to the jury, and the jury found against the defendant. It would seem from the evidence that the turn-table was a dangerous machine for boys to use, and yet that it was easily moved by boys, easily turned or revolved upon its axis, and that it was of that alluring character which would naturally invite boys to use it and to play upon it. It was situated within less than half a mile from Leavenworth, a populous city, in an open prairie, where the cattle of citizens roamed and grazed, where persons frequently passed and repassed, and where boys often played, and yet it was left without locks or fastenings, and without being watched or guarded, or even fenced in. That it would naturally attract boys and induce them to ride upon it, all men ought to know. Everybody knows that by nature and by instinct boys love to ride, and love to move by other means than their own locomotion. They will cling to the hind ends of moving wagons, ride upon swings and swinging gates, slide upon cellar doors and the rails of stair-cases, pull

sleds up hill in order to ride down upon them on the snow, and even pay to ride upon imitation horses and imitation chariots, swung around in a circle by means of steam or horse-power. This last is very much like riding around in a circle upon a turn-table. Now everybody, knowing the nature and the instincts common to all boys, must act accordingly. No person has a right to leave, even on his own land, dangerous machinery calculated to attract and entice boys to it, there to be injured, unless he first take proper steps to guard against all danger; and any person who thus does leave dangerous machinery exposed, without first providing against all danger, is guilty of negligence. It is a violation of that beneficent maxim, *sic utere tuo ut alienum non lædas*. It is true that the boys in such cases are technically trespassers. But even trespassers have rights which cannot be ignored, as numerous cases which we might cite would show. But see particularly the cases of *Railroad Co. v. Stout*, 17 Wall. 657, and *Keffe v. M. & St. P. Rly. Co.*, 21 Minn. 207, which are turn-table cases.

III. Was the plaintiff guilty of contributory negligence? This question was also fairly submitted to the jury, and they found against the defendant and in favor of the plaintiff. The plaintiff was a boy a little over twelve years old, and from his own testimony we should think was not a very bright boy, even for that age. He was born in Ireland, and his father was a common day laborer. On the day on which the accident occurred, the boy went to hunt his father's cow, and found her near the turn-table. He then, with other boys about his own age, went to the turn-table. He had never before seen one. He had previously been warned to stay away from the railroad, and from the cars, but had never been warned from the turn-table. There is some conflict in the evidence as to how he got on the turn-table, and in what position he was, when thereon, and when the accident occurred, whether sitting, standing or otherwise, and whether he was told by any one of the boys not to get on at the time he did so; but we must presume that the jury believed such

only of the conflicting evidence as was most favorable to the plaintiff. Now, take this boy at his premature age, with his limited knowledge and experience, and his lowly station in life, and probably it was intense amusement, almost irresistible, for him to ride upon a turn-table; and probably he did not imagine that he was a trespasser, or in the slightest danger. That plaintiff may recover under such circumstances, see *Railroad Co. v. Stout*, and *Keffe v. M. & St. P. Rly. Co.*, supra, and the authorities therein cited. Much of what we have said while discussing the defendant's negligence will apply here. Boys can seldom be said to be negligent when they merely follow the irresistible impulses of their own natures — instincts common to all boys. In many cases where men, or boys approaching manhood, would be held to be negligent, younger boys, and boys with less intelligence, would not be. And the question of negligence is in nearly all cases one of fact for the jury, whether the person charged with negligence is of full age or not.

We perceive no error in the rulings of the court below, and therefore the judgment will be affirmed.

HORTON, C. J., concurring.

BREWER, J., not sitting in the case.