Asa E. Kinchlow, *a Minor, by John Kinchlow his Father and Next Friend,* v. The Midland Elevator Company.

No. 8951.

Negligence — *obligation to use due care shown, whether due care exercised question for jury.* Where an owner of premises has reason to apprehend danger from the peculiar situation and condition of certain of their appurtenances and their openness to accident, the question whether he has exercised due care or not, as well as that of the contributory negligence of a person injured thereon, becomes one for the jury, to be determined upon all the facts and circumstances of the case.

*Error from Wyandotte Court of Common Pleas.*
*Hon. T. P. Anderson, Judge.*

REVERSED AND REMANDED.     OPINION FILED NOVEMBER 7, 1896.

*Dail & Bird*, for plaintiff in error.

*Morse & Morse*, and *Meservey, Pierce & German*, for defendant in error.

MARTIN, C. J.   On January 5, 1892, the plaintiff, a boy 10 years of age, was scalded and badly injured by falling into a barrel partly full of hot water formed by the exhaust steam from the engine used as a motive power for the defendant's elevator at Kansas City, Kansas.   On January 18, 1892, he commenced his action to recover damages in the sum of $15,000 on account of said injury.   The defenses were a general denial and a plea of contributory negligence, which latter was put in issue by the reply of the plaintiff. The case was called for trial on June 14, 1892, and the plaintiff introduced his evidence, to which the defendant demurred, and the demurrer was sustained and the jury discharged.   The plaintiff's motion for a new trial was overruled October 15, 1892.   Exceptions were duly taken to the rulings of the Court, and the case is now here for review.

The evidence tended to show the following facts : The Elevator Company occupies a strip of ground about a quarter of a mile in length east and west, and about 60 feet in width north and south.   There are railroad tracks on each side of the elevator, and the engine house and the office are separate buildings varying in distance from about 35 to 75 feet from the east end of the elevator.   A boxed-in shaft about three feet from the ground transmits the power from the engine

to the elevator, crossing the vacant space between the buildings. The exhaust-steam barrel was sunk in the ground so that its top was level with the surface and close to the elevator. The pipe led into the barrel just beneath the top, and the only covering of this barrel was either the original heading or something of the same shape and character, which lay loose on top. On each corner of the elevator building a sign was nailed about 14 feet from the ground with the words "DANGER, KEEP AWAY!" There was no guard or railing about the barrel, and no special warning of danger in reference to it. There was more or less passing of employees and others from the elevator to the engine house and the office, and some persons crossed the ground north and south, stooping to go under the boxed-in power shaft. There was no well-defined path north and south, but there was no obstruction in that respect except the shaft and its boxing. The neighborhood of the elevator was dangerous on account of the frequent movement of cars on either side. The plaintiff had been making his home for a week or two with John McQuillan, who, for a consideration paid by him to the Elevator Company, had the privilege of sweeping out the grain cars after they had been unloaded and obtaining the grain procured from the sweepings. The work was done mostly by two or three boys employed by McQuillan, including the plaintiff who worked for his board. The sweeping was done mostly east of the elevator on both sides and opposite the vacant space between it and the engine house and the office. The plaintiff and the other boys were forbidden by McQuillan from going into the office and the engine house, but were not warned about the exhaust-steam barrel, and the plaintiff never

noticed it until the day of his injury.   Hé and Walter Freeman, another boy, had been sweeping cars
all day, and McQuillan had gone to his house for a
lantern because it was necessary to continue work
after dark.   They got through with a car on the north
side and were next to work on the south side, and
McQuillan told them to remain until he came back.
The day was cold, and shortly after he left, a little
girl about eight years old told the plaintiff that the
barrel was a good place to warm his feet.   He noticed
a little steam coming out of the top of the barrel, and
he and Walter Freeman went toward it — the little
girl going away.   The plaintiff stepped upon the
cover, which tipped up and he fell into the barrel with
both feet.   Walter Freeman helped him out and they
went to McQuillan's house.   The plaintiff was so
badly scalded that the skin nearly all came off both
legs from the knees to the ankles, as also some of the
flesh.   He was afterward taken to a hospital where
the process of skin grafting was commenced ; but at
the time of the trial only partial progress had been
made and he was unable to stand on his feet, and he
will always be at least partially disabled.

If in the foregoing there was any evidence from
which a jury would have a right to infer negligence
of the defendant toward the plaintiff in maintaining
the steam-exhaust barrel in that particular place and
condition, then the case ought to have been submitted
to the jury, unless contributory negligence of the
plaintiff was also conclusively shown thereby.   *U. P.
Rly. Co. v. Rollins*, 5 Kan. 167, 181 ; *Caulkins v. Mathews*, 5 id. 191 ; *St. L. & S. F. Rly. Co. v. Richardson*,
47 id. 517, 519.   The maxim *sic utere tuo ut alienum
non lædas* has been applied in a great variety of cases,
and persons and corporations have often been held

liable for the use or exposure of their own property in such manner as to produce injury to the person or property of another.   The exposure of dangerous implements or machinery unguarded and in such a position as to be attractive to trespassing children has frequently been the sole ground of liability for injuries to them.   To this class belong the cases of *K. C. Rly. Co. v. Fitzsimmons*, 22 Kan. 686 ; *U. P. Rly. Co. v. Dunden*, 37 id. 1, and *Osage City v. Larkin*, 40 id. 206. Another class of cases more nearly allied to the present one is where traps or pitfalls are maintained on one's premises unguarded and in such position that others are liable to be injured thereby, as in *Penso v. McCormick*, 125 Ind. 116 ; *Bennett v. Railroad Co.*, 102 U. S. 577 ; *Bransom's Adm'r v. Labrot*, 81 Ky. 638 ; *Hydraulic Works Co. v. Orr*, 83 Pa. St. 332 ; *Schilling v. Abernethy*, 112 id. 437, and *U. P. Rly. Co v. McDonald*, 152 U. S. 262.   In the case last cited a boy was injured by running into a slack-pit not apparently dangerous on its surface but composed of live embers underneath.   The statute of Colorado required such places to be fenced ; but the Court, through Justice HARLAN delivering its opinion, discussed the general ground of liability in such cases without regard to any statute, and we are led to believe that the judgment in favor of the boy would have been affirmed even had there been no statutory duty imposed upon the railway company.

In the case of *Hydraulic Works Co. v. Orr*, supra, the Court thus lays down the rule :

" While it is true, in general, that where no duty is owed no liability arises, this rule varies with circumstances, and where, therefore, an owner has reason to apprehend danger from the peculiar situation of his property and its openness to accident, the question of duty then becomes one for a jury, to be deter-

mined upon all its facts of the probability of danger and the grossness of the act of imputed negligence."

In the foregoing cases the plaintiffs were either trespassers or had no more right to be where they were than the plaintiff in this case had to be at the barrel. The plaintiff was employed by the licensee of the defendant, and he had the same right as his employer to be on the premises while engaged at his work. *Powers v. Harlow*, 53 Mich. 507. The defendant should have known that McQuillan employed boys to assist in sweeping the cars, for they had been so engaged for months past. In *Powers v. Harlow*, supra, it was held that "a license to come upon one's premises, especially if in the licensor's interest, imposes upon him the duty to warn those who come, of any danger in coming of which he knows or ought to know and they do not."

The barrel had two elements of attractivness in the winter time, namely, the issuing steam and the heat. And with its defective head or cover level with the surface of the ground and ready to fall upon being touched, it was in the nature of a trap or pitfall.

The cases cited by counsel for defendant are not inconsistent with the foregoing. In *Brinkley Car Co. v. Cooper*, 60 Ark. 545, it was held that in an action by a child against the owner of land for injuries received by walking into a pool of hot water and being scalded, the jury should be directed in determining defendant's liability to consider whether the condition and situation of the pool were such that defendant, as a reasonable man, ought to have known that children of the age of plaintiff would probably be attracted to it, and would receive such injuries as plaintiff did receive. The judgment was reversed on account of misdirection

to the jury. In *Schmidt v. K. C. Distilling Co.*, 90 Mo. 284, there was no averment showing that the place where the child lost her life was attractive to children, or that, to the knowledge of the defendant, children were in the habit of resorting to it for amusement or otherwise ; and on a rehearing the case was remanded for another trial so as to allow such amendments to be made. In the case under consideration averments were made fully covering these points, and it was further alleged that this barrel as maintained was a dangerous trap. In *Birge v. Gardner*, 19 Conn. 507, a recovery by the plaintiff was sustained. In *Witte v. Stifel*, 126 Mo. 295, a recovery by the plaintiff was reversed, but it was a case so unlike the present one that we need not further consider it. We think it ought to have been submitted as a question of fact for the jury to determine upon the evidence whether the defendant was guilty of negligence or not in placing the barrel in that position and in maintaining it with such an insecure cover ; and also, whether or not, considering the age and capabilities of the plaintiff, he was guilty of contributory negligence in stepping upon the cover.

The judgment will be reversed, and the cause remanded for a new trial.

All the Justices concurring.