No. 38,092

ROBERT R. MOSELEY and ELSIE MOSELEY, *Appellees*, v. CITY OF KANSAS CITY, KANSAS, BOARD OF PUBLIC UTILITIES, and SOUTHWESTERN BELL TELEPHONE COMPANY, a Corporation, *Appellants*.

(228 P. 2d 699)

Opinion filed March 10, 1951.

*Alton H. Skinner, C. W. Brenneisen, Jr.,* and *Wm. H. Towers,* all of Kansas City, were on the briefs for the appellant, City of Kansas City.

*Charles W. Lowder,* of Kansas City, argued the cause, and *William Drennan* and *Otto Ziegelmeyer,* both of Kansas City, were with him on the briefs for the appellant, Board of Public Utilities.

*Kenneth L. Hodge,* of Topeka, and *James K. Cubbison,* of Kansas City, argued the cause, and *Lloyd S. Miller,* of Topeka, and *Blake A. Williamson* and

*Lee Vaughan*, both of Kansas City, were with him on the briefs for the appellant, Southwestern Bell Telephone Company, a Corporation.

*J. O. Emerson*, of Kansas City, argued the cause, and *Edw. M. Boddington* and *Edward M. Boddington, Jr.*, both of Kansas City, were with him on the briefs for the appellees.

The opinion of the court was delivered by

HARVEY, C. J.: Plaintiffs, as next of kin, proceeding under our statute ( G. S. 1947 Supp. 60-3203 and G. S. 1935, 60-3204), brought this action for the alleged wrongful death of their son, Donald D. Moseley. The appeal is from orders of the trial court overruling the demurrers of the respective defendants to plaintiffs' second amended petition.

We shall refer to the defendants, the City of Kansas City, as the City, the Board of Public Utilities of Kansas City as the Board, and the Southwestern Bell Telephone Company as the Telephone Company.

We need not refer to the earlier pleadings further than to say that the original petition was attacked by a motion to make definite and certain and to strike certain paragraphs, as a result of which an amendment was filed thereto; that as a result of the court's rulings on other motions a first amended petition was filed; and that as the result of the court's rulings on other motions a second amended petition was filed. This is lengthy, covering twelve pages of the abstract, but for the purpose of determining the legal questions argued here we think it may be summarized as follows:

Plaintiffs' son, Donald, lost his life about 4:30 a. m. August 9, 1948, when he climbed a pole used by the defendant Board to transmit electric energy for the lighting of the streets, and also used by the Telephone Company to carry its wires, and made contacts between such appliances from which he received a charge of electricity, producing his death. It was alleged Donald, who was sixteen years old, was of "low intelligence quotient, of backward and arrested mentality which was that of an ordinary child of twelve or thirteen years of age. He had just finished the eighth grade of the public schools and in both the seventh and eighth grade had been suitable only for and carried in the low-grade classes."

It was further alleged that the pole Donald climbed was situated at the southeast corner of the intersection of Ninth street and Waverly Avenue, both streets of the city. It was set against the east side of the curb of the pavement on Ninth street and was

situated within Ninth street and Waverly Avenue. At the top of the pole was a crossarm carrying wires of the Board, which carried electricity of about 2,300 volts, used in lighting the city's streets between sunset and sunrise. The lights on the pole in question were lighted at the time. The bracket supporting the lights and the wiring thereto are described in detail in the petition, and it was alleged that the wiring was insufficiently insulated, as a result of which the electricity passed through the bracket to which the lights were attached; that the wires leading from the crossarm to the lights were too close together and that the insulation thereon was insufficient, or it cracked. These lights were about eighteen feet from the ground. On the pole, about two feet below the lights, was the equipment of the Telephone Company, which is also described in some detail, and it was alleged that there was a loose wire hanging down from the wire of the Telephone Company. It was alleged that beginning three feet from the ground in the parking and four feet four inches from the pavement on Ninth street there were steps by which one might climb to the equipment of the Telephone Company and of the Board.

It was further alleged that plaintiffs' son, Donald, was ignorant of the danger from electricity to which he subjected himself in climbing the pole. It was further alleged that the pole, with the steps thereon and the appliances near the top, had existed for "months and years"; that no sign was ever posted and maintained on or about the pole warning of danger or warning children against climbing the pole; that at the time Donald climbed the pole, and for years prior thereto, children were in the habit of climbing the pole by means of the steps, and that

"The maintenance and continuance of these steps and other appliances herein described on the pole were attractive to children, and owing to the conditions on the pole as herein described a great and unnecessarily dangerous situation existed for persons and especially children climbing the pole, and the said pole and its maintenance with the said steps and in its dangerous condition at the time of and prior to the time Donald D. Moseley climbed the same as herein alleged constituted a nuisance, dangerous and attractive to children of the age and mentality of Donald D. Moseley."

It was further alleged that defendants knew, or by the exercise of reasonable care could have known, of the existence of the matters and conditions described in the petition, and that Donald "was ignorant of the danger from electricity to which he was subjected in climbing the pole, but climbed the same in a spirit of adventure

and fun." Alleged acts of negligence are set out in fourteen separate paragraphs, and it was further alleged that

"By reason of the matters and things alleged herein the defendants in maintaining and using the pole as herein alleged created and maintained a nuisance attractive to children, as a proximate result of which Donald D. Moseley lost his life in the manner herein stated.

"At the time of and prior to his death Donald D. Moseley was engaged in assisting in carrying and delivering papers and working in the plaintiff's store, and was in all respects unusually helpful to his parents, affectionate toward them, and they were fond of him and grieved greatly at his death."

The principal arguments in this court turn about the question which may be stated as follows: Was the pole, located and equipped as described in the petition, an attractive nuisance to a boy of the age of Donald D. Moseley and of his intellectual capacity and understanding, as described in the petition? Or, stated in another way, since in all cases where the doctrine of attractive nuisance is invoked the child is at least a technical trespasser, the question is whether the child is excused from his liability as a trespasser and whether the pole in its location and equipped, as alleged, constituted an invitation to him to climb the pole and investigate or in some manner work with or climb up around the wires, lights and other equipment thereon?

The pole was located in the parking at the intersection of two streets, where Donald had a right to walk, if he used due care. We assume, since it is not negatived, that the pole was also situated where defendants had a right to place it, if they used due care in erecting and maintaining it. So there is not much to be said for or against either party by the location of the pole. The question still remains: Was it an attractive nuisance, as that term is applied in negligence cases where children are involved, so as to excuse his trespassing thereon?.

The question first came into our opinions in the case of *Kas. Cent. Rly. Co. v. Fitzsimmons*, which was here on two appeals, 18 Kan. 34 and 22 Kan. 686. In that case a boy about twelve years of age was sent by his father to look after a cow, which he found near a railroad turntable in an open common, which was the grazing ground of many cows belonging to citizens of the town. He and five or six other boys went to play on the turntable, which was unlocked and easily pushed so as to turn around, as was a common practice with boys in the vicinity. He sat on the edge of the turntable in such a way that as it was turned his leg came in contact with an adjacent track. His leg was caught between them and so

injured that it had to be amputated. The trial resulted in a judgment for plaintiff, and on the first appeal the principal question was whether the defendant, or another company, was liable for the condition of the turntable. The judgment was reversed because of erroneous instructions concerning that matter. Nothing was said about the doctrine of attractive nuisance. On the second trial plaintiff again recovered a small judgment. Defendant appealed and the opinion of the court is found in 22 Kan. 686. There appellant *first* contended that it had nothing to do with the turntable or the corporation to which it belonged, a question which had been practically settled in the prior appeal; *second,* that it was not guilty of any negligence, and *third,* that the plaintiff was himself guilty of contributory negligence. All these questions had been decided against the appellant in a trial by jury. With respect to defendant's negligence (p. 690) the court took note of the fact that from the evidence it appeared the turntable was a dangerous machine for boys to use; that it was easily moved by them, easily turned or revolved on its axis, and that it was of that alluring character which would naturally invite boys to use it and to play upon it; that it was in an open prairie where cattle grazed, where boys often played; that it was left without locks or fastenings, without being watched or guarded, or even fenced in; that it naturally attracted boys and induced them to ride upon it; and compared it with what we might speak of as a merry-go-round, and said:

"It is true that the boys in such cases are technically trespassers. But even trespassers have rights which cannot be ignored, . . ."

Citing *Railroad Co. v. Stout,* 17 Wall. 657 (84 U. S. 657) and *Keffe v. Milwaukee & St. Paul Railway Co.,* 21 Minn. 207. The court further considered the question whether the plaintiff was guilty of contributory negligence, and relying upon the same two cases concluded it was a question for the jury, and in paragraph 3 of the syllabus concluded the verdict of the jury was binding on the court.

In *Railroad Co. v. Stout,* 17 Wall., 84 U. S. 657, a child six years of age, playing with others on a railroad turntable which was not guarded and not fastened or locked and revolved easily on its axis, was hurt while playing with other boys on the turntable, and sued for damages. In the trial "counsel for defendant disclaimed resting their defense on the ground that the plaintiff's parents were negligent, or that the plaintiff (considering his tender age) was

negligent, but rested their defense on the ground that the company was not negligent, and asserted that the injury to the plaintiff was accidental or brought upon himself." So the real question in the case was whether the defendant was negligent. The trial court gave an instruction on this question (p. 657), which was not objected to, and the jury returned a verdict for plaintiff. The supreme court affirmed the decision and held:

"While it is the general rule in regard to an adult, that to entitle him to recover for an injury resulting from the fault or negligence of another, he must himself have been free from fault, such is not the rule in regard to an infant of tender years. The care and caution required of a child is according to his maturity and capacity only, and this is to be determined in each case by the circumstances of that case."

In *Keffe v. Milwaukee & St. Paul Railway Co.*, 21 Minn. 207, a child of tender years, being of the age of seven, playing with other children on a railroad turntable situated in a public place near defendant's passenger depot, which was unfastened and not guarded or closed, was injured and sued for damages. The judgment was affirmed, the court holding:

"The owner of dangerous machinery who leaves it in an open place, though on his own land, where he has reason to believe that young children will be attracted to play with it and be injured, is bound to use reasonable care to protect such children from the danger to which they are thus exposed."

The court, in its opinion, treated the turntable as being very attractive to children as a place to play.

The doctrine of the above cases became known as that of the turntable cases. Later it was expanded to other objects and situations and is now generally known as that of an attractive nuisance. We shall not attempt to write a thesis on the subject. Those interested may find excellent discussions under the subject of "Negligence" in 45 C. J. §§ 155 to 189; 65 C. J. S. § 29; 38 Am. Jur. §§ 142 to 157. See, also, cases collected in the annotations, 36 A. L. R. 34; 39 A. L. R. 486; 53 A. L. R. 1546; 60 A. L. R. 1444; also the cases collected in the American Digest System under "Negligence," Key No. 23.

The attractive nuisance doctrine, recognized by the federal courts and by the courts of some (not all) of the states, including Kansas, is a modification of the general rules of liability for negligence and applies only to a child of "tender years," in which the child is a trespasser, at least in a technical sense, but is excused from the normal liability of a trespasser because of an attractive object or

situation, dangerous if used or handled by children who by reason of their tender years lack capacity to know or realize the danger of being about or handling the attractive object or condition. It does not apply to adults. Neither does it apply to children old enough to know the possible danger involved. The term "tender years" never has been defined in exact years and months, but in the overwhelming majority of jurisdictions, where the doctrine is used, it is rarely applied in the case of a child more than ten years of age. In a relatively few instances, each dealing with an unusual situation, the doctrine has been applied to a child of the age of eleven, twelve, thirteen or fourteen years of age. The courts universally hold that the doctrine is not applicable to a normal child more than fourteen years of age. The fact that a child, older than the normal age to which the doctrine is applied, has been backward in his work at school is not deemed sufficient to include the child within the doctrine, unless there is a showing that the backwardness in his studies is the result of mental impairment or deficiency.

It is not everything which may attract a child that can be regarded as an attractive nuisance, for there is no limit to the class of objects which may be attractive to a normal child even though he be less than ten years of age (45 C. J. p. 765.) To hold otherwise would place an unreasonable burden upon the owner of almost every kind of property capable of causing personal injury under any circumstances. The condition or appliance must be something unusual and which is of a nature rendering it peculiarly or unusually attractive or alluring to children. The object must be one and so situated that the owner knew, or should have known, it was attractive to children of tender years. In this case plaintiffs do not allege that the defendants knew or *should* have known children had played about the pole in question and that it was attractive and dangerous to children. What they do allege is that defendants *could* have known those facts. That is insufficient. The word "should" denotes duty. The word "could" denotes no more than a possibility.

The pole as described and alleged to have been used by defendants was one supporting wires which carried electric energy for the lighting of the streets of the city, and also supported wires used to furnish telephone service to the inhabitants of the city. There must have been many of them, since one of them could be of little service by itself. They had been used for many years.

The pole was not an uncommon thing. There was no reason to say that it was unusual, or that it was especially attractive, or that it constituted a nuisance. It was a necessary part of the equip-- ment used for the purpose of supporting wires for the transmission of electric energy. There is no effective way defendants "could" have known that children were playing about it and climbing it at 4:30 o'clock in the morning. It would have been necessary for defendants to have had someone to watch the pole, and all other poles used for that purpose. Obviously this would have been a financial burden which defendants were under no duty to impose upon themselves. The fact that children may have played about the premises on some previous occasion, even if known to defendants, is insufficient to constitute an invitation.

In the petition it was alleged that Donald did not know the danger of playing about wires carrying electric energy. Certainly such lack of knowledge cannot be regarded as the fault of defendants. If fault is to be placed upon anyone for that result it should be placed on plaintiffs.

Aside from the principal contention of the plaintiffs that the pole constituted an attractive nuisance it was alleged that the defendants were negligent in maintaining the pole and its equipment as described and are liable for that reason. The point is not well taken. Donald had no duties to perform, or any other business to transact, by climbing the pole. Defendants owed him no duty other than that they should not willfully or wantonly injure him. There is no contention that defendants knew of his presence there until after his death. He voluntarily went upon property belonging to others under such circumstances as to be properly regarded as a trespasser and sustained his fatal injuries by the lack of his own due care.

Examining the petition in the light of what has been said it is clear that the petition states no cause of action against any of the defendants. The judgment of the trial court should be reversed with directions to sustain the demurrers of the respective defendants to the second amended petition of plaintiffs.

It is so ordered.