No. 41,801

Ernest Shank, Surviving Father and next of kin of Alex Joe Shank (Revived in the name of JOSEPH E. BROCK, Administrator of the Estate of Ernest Shank, Deceased), *Appellant*, v. THE PEABODY COOPERATIVE EQUITY EXCHANGE, a Corporation, *Appellee*.

(352 P. 2d 41)

Opinion filed May 14, 1960.

*Enos E. Hook,* of Wichita, argued the cause, and *Sidney L. Foulston; John H. Gerety;* and *Sidney L. Foulston, Jr.,* all of Wichita, were with him on the briefs for the appellant.

*John F. Hayes,* of Hutchinson, argued the cause, and *Robert J. Gilliland;* and *C. W. Miller,* both of Hutchinson, and *David W. Wheeler;* and *Edwin G. Westerhaus,* both of Marion, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, C. J.: Ernest Shank of Peabody brought this action for damages for the wrongful death of his minor son against the Peabody Cooperative Equity Exchange, a Corporation, doing business in that city, and perfected an appeal to this court from an order and judgment of the district court of Marion County sustaining a demurrer to his amended petition.

Sometime after perfecting his appeal Ernest died intestate. Thereafter this action was revived in the name of Joseph E. Brock, as the administrator of such decedent's estate, and later, on proper appli-

cation, such fiduciary was substituted as appellant for purposes of proceeding with the appeal in this court.

The facts, which for purposes of testing the ruling on the demurrer must be accepted as true, appear in the amended petition. Omitting formal averments, surplus language and the prayer, pertinent portions of that pleading read:

"4. That Alex Joe Shank, the minor son of this plaintiff, was fatally gassed by cyanide gas on the 25th day of November, 1958, due to the carelessness, negligence and incompetence of the defendant, . . .

"5. That this plaintiff . . . alleges that at all times hereinafter mentioned the defendant, The Peabody Cooperative Equity Exchange, was . . . in possession of and had control, supervision or management of a metal warehouse, which was being used for the storage of wheat, located . . . in the City of Peabody, . . .

"6. That said . . . warehouse is located in an area in which are located business, industrial and residential buildings.

"7. That this plaintiff . . . alleges that during the day light hours of November 25, 1958, the defendant, . . . did administer to the . . . warehouse an amount of liquid cyanide gas for the purpose of killing rodents and insects which contaminate and destroy wheat; . . . defendant knew that said . . . gas was both toxic and lethal to all forms of life.

"8. . . . for a period of time prior, and more particularly during the period of construction and the subsequent loading of the said . . . warehouse, the said . . . warehouse was regularly, habitually and commonly used by the children of the City of Peabody, and more particularly Alex Joe Shank, as an attraction and a place to play on and in and about. Such use . . . was at all times well known to the defendant's officials, agents and employees.

"9. That the aforesaid use by the children . . . was entirely without objection on the part of the defendant and was with the knowledge and assent and tacit permission of the defendant's officials, agents and employees.

"10. That said . . . warehouse . . . at the time herein complained of was entirely open, unguarded, unenclosed by any fence, barricade or obstruction and there was no watchman to prevent children from going thereon and making the aforesaid uses thereof.

"11. That the plaintiff . . . alleges that for a period of time prior to the 25th day of November, 1958, the . . . warehouse so owned, maintained or controlled by the defendant . . . had been openly and notoriously used by the public, and particularly the children of the community and neighborhood for purposes not connected with the business of the defendant company.

"12. That . . . children were in the habit of entering upon the defendant's premises and playing upon and ascending the ladder to doors in said . . . warehouse, said doors being 19 feet and 10 inches above the ground, all of which the defendant knew . . . by the exercise of reasonable care.

"13. That . . . on the 25th day of November, 1958, between . . .

3:00 and 9:15 p. m., . . . Alex Joe Shank, being of the age of eleven years and being in the company of Johnny Skinner, a boy approximately the same age, while playing in the vicinity of the . . . warehouse . . . which was owned, controlled and maintained by the defendant . . . ascended a ladder affixed to the . . . warehouse . . . to the door, located 19 feet and 10 inches above the ground and at the Southwest Corner of said . . . warehouse . . . when said Alex Joe Shank stepping off of said ladder and unto a platform attached to said building and immediately in front of the door . . ., opened said door and upon breathing the toxic and lethal fumes of the cyanide gas became unconscious and fell forward through the open door into the . . . warehouse where he died because of the lethal cyanide gas.

"14. That the said accident and resultant death . . . was proximately caused by and was the result of the carelessness and negligence of the defendant.

"(a) In failing to anticipate and guard against the action of the minor . . . in climbing the ladder.

"(b) In failing to have an employee located on the defendant's property to keep children away from the . . . warehouse.

"(c) In failing to enclose the . . . warehouse and post adequate barricades and obstructions to prevent its use and accessibility by the minor, Alex . . ., and other small children, and its failure to post a watchman to prevent children from being attracted to and using as a place to play the said . . . warehouse.

"(e) In knowingly allowing small children to play about, open doors, and go into the . . . warehouse.

"(f) In failing to have a watchman around the . . . warehouse when the defendant knew . . . that small children played around said . . . warehouse, and more particularly after toxic and lethal cyanide gas had been released in the interior of the . . . warehouse.

"(g) In not taking any safety precautions of any kind to warn minor children or mature humans of the . . . cyanide gas installation . . . that said gas had the capability of killing all forms of human life.

"(h) In placing a highly toxic and lethal chemical into its . . . warehouse without giving notice thereof . . .

"(i) In permitting and instructing its managers, agents, . . . to place a toxic and lethal chemical into said . . . warehouse when said managers, agents, . . . were not properly instructed. . . .

"(j) In not allowing sufficient time to expire between the time of placing a toxic and lethal chemical into its . . . warehouse and allowing and permitting humans to enter upon the premises.

"(k) In failing to provide a proper and sufficient ventilation system in its . . . warehouse.

. . . . . . . . . . . . .

"(m) In failing to notify or rope off the area around the . . . warehouse, post notices or otherwise warn the public . . . that a highly toxic and lethal chemical had been placed in its . . . warehouse.

"(n) In failing to securely fasten or lock all entrances in and to said . . . warehouse . . ., or to provide means of preventing access thereto.

"(o) In failing . . . to have available safety devices for the purpose of preventing accidents of this nature in its . . . warehouse.

"(p) In permitting and allowing humans to go into, upon or near its . . . warehouse when it knew . . . its . . . warehouse was extremely dangerous because of the toxic and lethal chemical used which could cause death and did result in the death of Alex. . . .

"(q) The establishing and maintaining of a place attractive to children well knowing that said place fraught with great hazard and danger to said children.

"15. That . . . defendant knew that the . . . gas which was used . . ., was a poisonous gas . . . and capable of killing human beings."

Following the filing of the foregoing petition the defendant demurred thereto on the ground it did not state facts sufficient to constitute a cause of action in that the matters and allegations therein contained conclusively showed the decedent, Alex Joe Shank, was at all times material a trespasser, was of sufficient age and capacity to be not free from fault and was guilty of negligence which proximately caused or contributed to his death thereby barring plaintiff of any recovery.

After a hearing the trial court sustained the foregoing demurrer and this appeal followed.

In approaching questions raised by the parties in connection with the propriety of the ruling on the demurrer time and space will be saved by a brief reference to divers matters.

As against a demurrer all well pleaded allegations of the amended petition, hereinafter referred to as the petition, must be accepted as true and appellant is entitled not only to the benefit of all facts thus pleaded but to all reasonable inferences that may be drawn therefrom (*Galleher v. City of Wichita,* 179 Kan. 513, 522, 523, 296 P. 2d 1062).

This is what is known as an attractive nuisance case.

Historically, the attractive nuisance doctrine was recognized as a part of the law of this state in what was then known as the turntable cases, the first being *Kansas Cent. Ry. Co. v. Fitzsimmons,* 22 Kan. 686. For an outstanding discussion of the cases on which the doctrine was founded, as well as its application, see *Moseley v. City of Kansas City,* 170 Kan. 585, 588 *to 590, incl.,* 228 P. 2d 699. Later such doctrine was expanded to other objects and situations and is now generally known as that of an attractive nuisance. For

a discussion of the over-all subject, wherein both our early and more recent decisions are considered, discussed and construed, see pages 519 to 522, incl., of the opinion in the *Galleher* case.

In *Moseley v. City of Kansas City*, supra, we said:

"The attractive nuisance doctrine, recognized by the federal courts and by the courts of some (not all) of the states, including Kansas, is a modification of the general rules of liability for negligence and applies only to a child of 'tender years,' in which the child is a trespasser, at least in a technical sense, but is excused from the normal liability of a trespasser because of an attractive object or situation, dangerous if used or handled by children who by reason of their tender years lack capacity to know or realize the danger of being about or handling the attractive object or condition. It does not apply to adults. Neither does it apply to children old enough to know the possible danger involved. . . ." (pp. 590 & 591.)

And in *Galleher v. City of Wichita*, supra, following prior decisions, we held:

"The attractive nuisance doctrine prevailing in this jurisdiction is based upon the negligence of the proprietor who fails to protect young children attracted to his premises by some dangerous thing or place artifically created, and where he should have anticipated that the children would be lured into the danger." (Syl. ¶ 3.)

The principle involved in attractive nuisance cases is the same as that upon which the earlier "turntable cases" were resolved, in which it was held, with few exceptions, that the maintenance, in an unguarded manner, of a dangerous apparatus for the shifting of locomotives, attractive to children residing or accustomed to playing nearby, constituted negligence upon the part of companies operating turntables. (*Price v. Water Co.*, 58 Kan. 551, 555, 50 Pac. 450.)

It is not feasible to here write a thesis on the attractive nuisance doctrine and we shall not attempt to do so. However, much has been written on the subject and it should be pointed out that those interested in exploring it will find numerous decisions, dealing therewith, cited in the *Moseley* and *Galleher* cases; in decisions to which we shall presently refer; in cases from this jurisdiction listed in West's Kansas Digest, Negligence, § 23, and in Hatcher's Kansas Digest [Rev. Ed.], Negligence, §§ 20 to 23, incl.; also excellent discussions under the subject of negligence in 45 C. J. §§ 155 to 189; 65 C. J. S. § 29; 38 Am. Jur., §§ 142 to 157. See also, cases collected in annotations, 36 A. L. R. 34; 39 A. L. R. 486; 53 A. L. R. 1546; and 60 A. L. R. 1444.

Nor do we believe that it is necessary or required that we repeat the comprehensive allegations of the petition which, since they were quoted at length for that purpose early in this opinion, we may assume our readers have a full and complete understanding. It suffices to say that after careful analysis of all such allegations, mindful that for present purposes we are not concerned with what the proof may show concerning them on a trial of the cause, we find several cases, substantially similar from the standpoint of facts and circumstances involved, which, when such allegations are accepted as true and given the benefit of inferences to which they are entitled for purposes of testing the propriety of the ruling now under consideration, convince us the trial court erred in sustaining the demurrer to the petition.

The first and perhaps the most important of the cases to which we have just referred, particularly since it was here on appeal from an order sustaining a general demurrer to a petition based on liability under the attractive nuisance doctrine, is *Biggs v. Wire Co.,* 60 Kan. 217, 56 Pac. 4. There liability was predicated on the maintenance of dangerous machinery on private grounds. Here liability is based on the maintenance, under the conditions and circumstances set forth in the petition, of an unguarded metal warehouse which, with the knowledge and acquiesence of the appellee, was regularly, habitually and commonly used by the children of Peabody, and more particularly Alex Joe Shank, who was eleven years of age, as an attraction and a place to play on and in and about. In reversing the trial court's action sustaining the demurrer this court, on allegations of a petition far less comprehensive than the one in the case at bar held:

"The maintenance of dangerous machinery on private grounds, unprotected from the visits of trespassing children, renders the owner thereof, who has knowledge that children and others are accustomed to frequent said grounds and climb upon the structures supporting said dangerous appliances, liable in damages to the next-of-kin of a boy fourteen years of age who was caught in said exposed machinery and killed.

"In this case, the question whether the boy was of sufficient intelligence, natural capacity, foresight and judgment to be guilty of contributory negligence was for the jury." (Syl. ¶¶ 1 & 2.)

The next is *Price v. Water Co.,* supra, which was here on appeal from an order sustaining a demurrer to the plaintiff's evidence. So far as the record shows the petition was not challenged and the case went to trial on issues joined by the pleadings, including a petition containing allegations quite similar to those here involved. In that

case it is interesting to note we rejected a contention the defendant owed the deceased boy no duty to guard against the accident which occurred because he was a trespasser on its premises; and in reversing the order and judgment sustaining the demurrer held:

"A water-works company, which maintains upon its grounds deep reservoirs of water attractive to small boys, who to its knowledge and with its permission resort thereto for fishing and for play, and which takes no reasonable precautions to prevent accidents to them while engaged in such amusements, is liable in damages if one of them, without negligence upon his part falls in and is drowned.

"The question whether a bright, intelligent boy eleven years of age, who was drowned in venturing to a deep and dangerous reservoir for fishing and for play, was negligent in so venturing, is for the determination of the jury and not the court." (Syl. ¶¶ 1 & 2.)

And in the opinion said:

"The contention arising upon the above state of facts divides itself into two principal questions: *First,* Was the defendant in error negligent, as to the deceased boy, in maintaining the dangerous reservoir? and, *second,* Was the deceased guilty of contributory negligence in venturing upon the slanting wall and projecting apron? These are questions of fact, and they should have been left to the jury for determination. They are not questions of law for decision by the court." (pp. 553, 554.)

Another case is *Kansas Cent. Ry. Co. v. Fitzsimmons,* supra, heretofore referred to as the first of the turntab'e cases. This case was tried by a jury which returned a verdict in favor of the plaintiff and judgment was rendered accordingly. In affirming the judgment we held:

"In an action against a railroad company, for injuries received by the plaintiff, a boy twelve years old, on a turn-table, negligently left in a public place, unlocked, unguarded, etc., the questions whether the defendant had anything to do with the turn-table, whether the defendant was negligent or not, and whether the plaintiff was guilty of contributory negligence or not, are questions of fact, to be determined by the jury upon the evidence." (Syl. ¶ 1.)

See, also, *Kinchlow v. Elevator Co.,* 57 Kan. 374, 46 Pac. 703, an attractive nuisance case, involving a ten-year-old boy who fell into a barrel partly full of hot water located close to an elevator. In that case, in reversing the trial court's action in sustaining a demurrer to plaintiff's evidence, we held:

"Where an owner of premises has reason to apprehend danger from the peculiar situation and condition of certain of their appurtenances and their openness to accident, the question whether he has exercised due care or not, as well as that of contributory negligence of a person injured thereon, becomes one for the jury, to be determined upon all the facts and circumstances of the case." (Syl.)

Still another, and more recent decision, is *Talbott v. Farmers Union Co-op Elevator*, 174 Kan. 435, 256 P. 2d 856. The action was brought by the parents of an eight-year-old boy to recover damages for his wrongful death, allegedly caused by the defendant elevator company and its manager in negligently maintaining an attractive nuisance in the form of an insecurely and defectively covered abandoned well on the elevator premises. Defendants' demurrers to the petition and the amended petition, based on grounds both pleadings failed to state a cause of action under the attractive nuisance doctrine, were overruled and we affirmed the trial court's ruling. Without laboring the opinion in that case it may be stated from what is there said and held we are convinced it supports the decisions last above cited and our previously indicated view as to the propriety of the ruling on the demurrer in the instant case.

When the facts, conditions and circumstances alleged in the petition are carefully reviewed, in the light of the foregoing decisions and what has been heretofore stated and held, we are impelled to conclude, contrary to appellee's contentions on the two questions it concedes are involved on appeal, that it may not be held as a matter of law (1) that the metal warehouse in question was not maintained in such a manner as to constitute an attractive nuisance or (2) that the decedent, Alex Joe Shank, was of such age that his actions constituted those of a trespasser, thereby barring the doctrine of attractive nuisance and making such decedent guilty of negligence which proximately caused and contributed to his death. Stated in different form, accepting the allegations of the petition as true and assuming appellant will be able to assume the burden of proving them as pleaded, we are convinced that pleading contains allegations sufficient to require consideration of the foregoing questions by the trier of facts.

In conclusion it should be stated we have not overlooked but carefully examined decisions from this jurisdiction, cited by appellee in support of its position the demurrer was properly sustained. In our opinion such decisions are clearly distinguishable. To illustrate:

*Moseley v. City of Kansas City*, supra, the only Kansas case cited by appellee in which a ruling on a demurrer to a petition is involved, points out the petition in that case does not allege the defendants knew, or should have known, children had played about the place in question. Moreover, the law of the case, as stated in the syllabus, holds the doctrine of attractive nuisance is not applicable to a boy

of sixteen years. In the case at bar the petition contains allegations of knowledge and acquiesence by appellee of use on the part of children generally; and the boy involved was only eleven years of age at the time of the accident.

*Talbott v. Farmers Union Co-op Elevator,* supra, and *Galleher v. City of Wichita,* supra, have been heretofore discussed and construed as upholding appellant's position as to the sufficiency of the petition.

In *Brennan v. Kaw Construction Co.,* 176 Kan. 465, 271 P. 2d 253, the appeal was from an order sustaining a demurrer to evidence, not the petition, which we affirmed. The question involved was whether there was sufficient proof of the existence of an attractive nuisance. Moreover, in deciding the case we held that the rule as to liability of the defendants depended on whether the danger involved was latent or patent and that the proof established it was patent, hence the ruling was proper. Here the danger from liquid cyanide gas must be admitted to have been a latent danger.

In *Anderson v. Kansas City Public Service Co.,* 127 Kan. 375, 273 Pac. 397, the court decided that a demurrer should have been sustained to the evidence. However, it is to be noted the boy there involved was thirteen years old, the plaintiff sought recovery on the theory that a public viaduct, together with utility transmission lines, constituted an attractive nuisance, and that we held that under the evidence, the electric wires could hardly have been put in a place more difficult of access to the injured plaintiff.

*Pennington v. Oil & Gas Co.,* 106 Kan. 569, 189 Pac. 137, is a case where the plaintiffs, father and mother of a nine-year-old son, brought an action against the defendant for its alleged negligence in causing the child's death. The trial court sustained a demurrer to the plaintiffs' evidence, gave judgment for the defendant, and on appeal from that ruling we affirmed the judgment. Attention is directed to the fact that, in that case, the machinery alleged to have caused the death of the son was enclosed and not left unguarded. Moreover, the plaintiff father, himself, had been employed by the defendant to run and guard its pumping plant and had been in that position for a considerable period of time before the accident.

The order and judgment of the trial court in sustaining the demurrer to the petition is reversed.

It is so ordered.