No. 48,613

WILLIE R. TALLEY, FATHER AND HEIR-AT-LAW OF LYNN RAY TALLEY, DECEASED, *Appellee,* v. J & L OIL COMPANY, INC., *Appellant.*

(579 P.2d 706)

Opinion filed June 10, 1978.

*David G. Arst,* of Arst & Goudy, of Wichita, argued the cause and was on the brief for the appellant.

*John C. Frank,* of Wichita, argued the cause, and *Raymond W. Baker,* also of Wichita, was with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: This is a wrongful death action brought on the attractive nuisance theory. The deceased, Lynn Ray Talley, was a 13½-year-old boy who drowned in an oil storage tank located near the outskirts of the city of Wichita. The father of the deceased boy recovered judgment on a jury verdict for $23,500.00. The J & L Oil Company, Inc., which was operator and owner of the oil lease, brings this appeal. It claims the trial court erred in submitting the case on the attractive nuisance theory, in refusing to submit the contributory negligence question to the jury, and in refusing to admit certain evidence proffered by the defendant.

Taking the evidence in a light favorable to the plaintiff we will summarize the evidence. The 13½-year-old boy, Lynn, lived with his mother, step-father, brothers and a sister in a residential area of Wichita. Their home was located within several hundred yards of an oil tank battery which could be seen from the residence. The tank battery was located in a pasture where horses were kept by a third party. Various people of all ages frequented the pasture area for fun and games. The tank battery was inside an area enclosed

by a chain-link fence, topped with barbed wire. The gate to this enclosed area was chained and padlocked. However, a depression under the gate permitted a youngster to crawl under the gate and get into this fenced enclosure. The testimony as to the size of this hole was conflicting. It was estimated to be as deep as 24 inches. The cause of the depression or hole was not disclosed but it had existed for some period of time. On the evening of Lynn's death there were four youngsters about Lynn's age who played on this tank battery. They gained entry under the fence, climbed up a ladder to the top of the two storage tanks and amused themselves by jumping from one tank to the other, a distance of about four feet. They had played on these tanks before and on the previous day they learned that the clean-out hatch on top of one of the tanks was loose. It was loosely attached by only one bolt. On the day in question one of the youngsters swung the hatch sidewise. Two of the boys, including Lynn, then decided to go down a ladder into the tank. The tank contained about three feet of crude oil. After staying a few minutes they felt light headed so they climbed out of the tank. Later they decided to try it again. On entering a second time the second boy felt light headed and crawled out of the tank. He looked around and Lynn was not with him. The boys enlisted the aid of neighbors. The fire department was then called. The lack of oxygen in the tank made it difficult to retrieve Lynn's body from the crude oil. After several unsuccessful attempts the firemen managed to retrieve the body. Lynn had become unconscious from lack of oxygen, fell into the crude oil and drowned.

The appellant contends the trial court erred in submitting the case to the jury because the evidence established as a matter of law that no attractive nuisance existed.

The conditions necessary to impose liability on a possessor of land for maintaining an attractive nuisance are listed in *Gerchberg v. Loney*, 223 Kan. 446, 576 P.2d 593 (1978), where this court states:

". . . A possessor of land is subject to liability for bodily harm to children intruding thereon caused by some condition that he maintains on the premises if:

"(1) the possessor knows, or in the exercise of ordinary care should know, that young children are likely to trespass upon the premises, and

"(2) the possessor knows, or in the exercise of ordinary care should know, that the condition exists and that it involves an unreasonable risk of bodily harm to young children, and

"(3) the children because of their youth either do not discover the condition or understand the danger involved in coming into the dangerous area, and

"(4) one using ordinary care would not have maintained the condition when taking into consideration the usefulness of the condition and whether or not the expense or inconvenience to the defendant in remedying the condition would be slight in comparison to the risk of harm to children." (pp. 447-448.)

We have examined each of these requirements in light of the evidence introduced in this case.

First, did the oil company know, or in the exercise of ordinary care should have known, that young children were likely to trespass upon the premises? We believe there was sufficient evidence from which a jury might find that the youngsters living in that area not only played in the pasture but also on and around the tanks located inside the fenced area. Although the president of the company and another employee responsible for the operation of the lease denied seeing youngsters in or around the fenced area, there was testimony from which a jury could find the company should have known that youngsters were playing on and around the tanks. An employee of the company testified he visited the area and inspected the tank battery at least once every day. Various youngsters testified they had played on and around the tanks at previous times. They had never been instructed to leave the area or to stop playing on the tanks. However, they did not testify the company employee saw them on or around the tanks.

The second condition required for an attractive nuisance is that the oil company knew, or in the exercise of ordinary care should have known, that the condition existed and that it involved an unreasonable risk of bodily harm to young children. The tank battery was required by city ordinance to be fenced as a dangerous area. It was located within the city limits. The propensity of youngsters to climb is a matter of common knowledge. Each tank was equipped with ladders both inside and out, and even though the oil company may not have known children would open the clean-out hatch and descend into these tanks, the company through its employees might reasonably have known there was risk of bodily harm to children playing thereon if the hatch were loosened and a child stumbled and fell into the tank containing the oil.

The third condition to be established by evidence is that children because of their youth either do not discover the condi-

tion or understand the danger involved in coming into the dangerous area. This is a question of fact for the jury in most cases for it depends on the age and understanding of the children as well as the nature of the condition. The location of the storage tanks, the presence of fumes from the oil which displaced the oxygen, and the resulting dizziness and loss of equilibrium are not such that we can say as a matter of law children should understand and avoid.

Turning to the fourth condition—although there can be little doubt that the tank battery was necessary and useful in operating the producing oil lease, the company's maintenance of proper protective measures must be considered. The tank battery was located within the city limits. Although the chain-link fence, topped with barbed wire as required by city ordinance, surrounded the tank battery there was evidence of a hole or depression underneath the gate which made entry into the enclosed area fairly easy. There was testimony that the hatch on top of the tank battery was equipped with several holes to be used in bolting the hatch solid, yet it had but one loose bolt and the lid could be easily swung aside by applying pressure. It would appear that whether the oil company used ordinary care in inspecting the facility and in maintaining reasonably safe conditions should be left to the jury.

Various cases involving attractive nuisance questions have been cited by the parties but are not dispositive under the facts and circumstances of this case. In *Moseley v. City of Kansas City,* 170 Kan. 585, 228 P.2d 699 (1951), a telephone pole was held not to be an attractive nuisance. In *Pennington v. Oil & Gas Co.,* 106 Kan. 569, 189 Pac. 137 (1920), a pump and engine used in operating an oil lease were held not to be an attractive nuisance. On the other hand, a barrel of hot water with a defective cover, level with the ground, may be such that a jury could find it to be an attractive nuisance. See *Kinchlow v. Elevator Co.,* 57 Kan. 374, 46 Pac. 703 (1896). A jury question was presented in *Shank v. Peabody Cooperative Equity Exchange,* 186 Kan. 648, 352 P.2d 41 (1960), where an unguarded warehouse containing wheat treated with a toxic and lethal gas was equipped with a ladder by which children playing in the area ascended to a door and gained entrance into the building.

We hold in the present case a jury question was presented and

the trial court did not err in submitting the case on the theory of attractive nuisance.

Appellant contends the court erred in refusing to submit to the jury for its decision the contributory negligence, if any, of the 13½-year-old boy and of his parents. The trial court in giving instruction No. 3 stated:

"You are instructed that the Court finds as a matter of law that neither the deceased, parent, or heirs-at-law was guilty of any negligence in this case."

By giving this instruction the court committed reversible error under the facts and circumstances of this case.

Apparently the court made this decision because the lack of oxygen inside the tank was a latent condition unappreciated by the boy or by the parents. This does not negate the question of whether a 13½-year-old boy can be found negligent in trespassing inside a fenced-in area, removing a bolted cover, and descending the stairs into the dark storage tank with oil in the bottom. This court has consistently held that as to older children the child's contributory negligence is a question of fact to be determined by the jury. See *Shank v. Peabody Cooperative Equity Exchange,* supra (a case of an eleven-year-old); *Biggs v. Wire Co.,* 60 Kan. 217, 56 Pac. 4 (1899) (a case of a fourteen-year-old); *Price v. Water Co.,* 58 Kan. 551, 50 Pac. 450 (1897) (a case of an eleven-year-old); *Kinchlow v. Elevator Co.,* supra (a case of a ten-year-old); and *K. C. Rly. Co. v. Fitzsimmons,* 22 Kan. 686 (1879) (a case of a twelve-year-old).

In *Biggs v. Wire Co.,* supra, this court held:

". . . We cannot say, as a matter of law, at what age a boy would be possessed of such intelligence, foresight and judgment as to charge him with contributory negligence in a case like the present. It is peculiarly within the province of the jury to determine such questions. . . ." (p. 223.)

The 13½-year-old boy in the present case is over the age which would justify an automatic holding that he was incapable of understanding the nature and consequences of his acts. In *Moseley v. City of Kansas City,* supra, this court said:

"The attractive nuisance doctrine, . . . applies only to a child of 'tender years,' in which the child is a trespasser, at least in a technical sense, but is excused from the normal liability of a trespasser because of an attractive object or situation, dangerous if used or handled by children who by reason of their tender years lack capacity to know or realize the danger of being about or handling the attractive object or condition. It does not apply to adults. Neither does it apply to

children old enough to know the possible danger involved. The term 'tender years' never has been defined in exact years and months, but in the overwhelming majority of jurisdictions, where the doctrine is used, *it is rarely applied in the case of a child more than ten years of age.* In a relatively few instances, each dealing with an unusual situation, the doctrine has been applied to a child of the age of eleven, twelve, thirteen or fourteen years of age. *The courts universally hold that the doctrine is not applicable to a normal child more than fourteen years of age. . . ."* (pp. 590-591. Emphasis supplied.)

The reason that children nine years of age and younger are generally presumed conclusively incapable of contributory negligence is that they cannot be held to strict accountability to appreciate a danger and to care for themselves as is required of older persons. (*Williams v. Davis,* 188 Kan. 385, 390, 362 P.2d 641 [1961].) This court has held that as to children between nine and thirteen it cannot be said they are incapable of exercising any care or that they are thus relieved from the doctrine of contributory negligence because of age:

". . . [T]he question of capacity of a particular child at a particular time in avoiding a particular danger is one of fact, falling within the province of a jury to determine. . . ." (*Weber v. Wilson,* 187 Kan. 214, 220, 356 P.2d 659 [1960].)

As to the contributory negligence of the parents it was also error to take this question from the jury. In *C.K. & W. Rld. Co. v. Bockoven,* 53 Kan. 279, 36 Pac. 322 (1894), the court held the contributory negligence of a parent may be shown to bar a parent's recovery when the action is brought by the parent.

Here the parents lived near the tank battery, yet had never warned the boy of the dangers. This would raise a question of fact for the jury as to whether they should have known of the dangers and should have warned the boy or declared the tank battery "off limits" to the boy. It does appear that the mother instructed the boy at one time not to play in a shallow pond located in the pasture. The parents testified they had never seen the children playing on the tank battery, but it was visible from their residence. If their children and others habitually played on the tanks, as plaintiff's evidence tends to indicate, a jury could infer the parents should have known of this fact and taken steps to prevent the children from doing so.

The two remaining questions relate to the admissibility of certain evidence excluded by the trial court. The defendant attempted unsuccessfully to introduce a sample of oil to show the extent of the offensive odor emanating from the storage tank. The

sample was not taken from the particular storage tank in question. Production from the lease had been discontinued and the tanks removed when this case was tried. The sample was of oil produced from the same general area or pool. The sufficiency of a foundation for the admissibility of evidence largely rests with the trial court. (*Anderson v. Berg,* 202 Kan. 659, 451 P.2d 248 [1969].) The oil came from an entirely different tank battery and there were other variables which might well justify the court's decision, such as the volume of the sample in a gallon can as opposed to the large tank, and the difference in the temperatures outside and inside the two containers which might affect the odors.

There was no abuse of discretion in refusing to admit the sample of oil.

Medical records from the hospital were excluded which showed prior hospitalizations of the boy for alcohol intoxication at one time and for illness suspected to have been caused by ingesting a soft drink containing a drug at another time. The record does not clearly indicate the relevancy of this evidence. The records apparently were offered as bearing on reputation and character. If such was the purpose, we fail to see how the boy's character could be in issue. However, evidence of these two illnesses and the boy's propensity for "sniffing gasoline" were brought out in the testimony by one of his friends. A trial judge has a right to reject relevant evidence where such evidence is cumulative of facts established and where the probative value of relevant evidence is outweighed by the risk of placing undue emphasis on some phase of the lawsuit with possible prejudice resulting. (K.S.A. 60-445; *Trimble, Administrator v. Coleman Co., Inc.,* 200 Kan. 350, 437 P.2d 219 [1968]; *State v. Davis,* 213 Kan. 54, 515 P.2d 802 [1973].)

The judgment is reversed for failure of the trial court to submit the question of the contributory negligence of the deceased and his parents to the jury, and the case is remanded for a new trial.